UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Jonathan BERALL, M.D., M.P.H., <br>    Plaintiff, <br> vs. <br><br> VERATHON INC., et al., <br>    Defendants. | Civil Action No. 1:10-cv-05777-BSJ <br><br><br> VERATHON INC.'S MEMORANDUM <br> OF LAW IN SUPPORT OF MOTION TO <br> STAY ACTION |

## VERATHON INC.'S
## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO STAY ACTION

**TABLE OF CONTENTS**

I.    Introduction ......................................................................................................... 1

    A.    Litigation – Early & Not Urgent .......................................................... 1

    B.    The PTO Will Decide Very Quickly Whether To Re-Examine The Patent ........ 1

    C.    PTO Re-Examination Is Highly Likely, Potentially Eliminating The Case ........ 1

II.    Argument ............................................................................................................ 2

    A.    Litigation Procedural Posture & Background ...................................... 2

    B.    Request For Reexamination Of The '178  Patent – Pending PTO Decision........ 2

    C.    Requests For Reexamination Are Almost Always Granted, & Quickly.............. 3

    D.    Reexamination – Claims Are Usually Cancelled Or Modified............................ 4

    E.    Liberal Standard For Stays Pending Reexamination............................................. 5

    F.    All Factors Weigh Heavily In Favor Of Granting A Stay.................................... 6

        1.    A Stay Will Not Unduly Prejudice Or Present A Clear Tactical Disadvantage 7

        2.    A Stay Will Simplify The Issues In Question And Trial Of The Case ............. 9

        3.    The Early Stage Of The Litigation Greatly Favors Stay ................................. 11

    G.    Judicial And Party Resources Will Be Conserved By A Stay ............................ 12

## TABLE OF AUTHORITIES

**Cases**

Broad. Innovation, L.L.C. v. Charter Commc'n, Inc., CIV A03-CV2223ABJBNB, 2006 WL
1897165 (D. Colo. July 11, 2006) .............................................................................. 5, 6

Canady v. Erbe Elektromedizin GmbH, 271 F. Supp. 2d 64 (D.D.C. 2002) .................................. 4

Cross Atl. Capital Partners, Inc. v. Facebook, Inc., 07-2768, 2008 WL 3889539 (E.D. Pa. Aug.
18, 2008) ......................................................................................................................... 6

Emhart Indus., Inc. v. Sankyo Seiki Mfg. Co., Ltd., 85 C 7565, 1987 WL 6314 (N.D. Ill. Feb. 2,
1987) ................................................................................................................................. 7

eSoft, Inc. v. Blue Coat Sys., Inc., 505 F. Supp. 2d 784 (D. Colo. 2007) .................................. 10

Ethicon, Inc. v. Quigg, 849 F.2d 1422 (Fed. Cir. 1988) .................................................................. 5

Gould v. Control Laser Corp., 705 F.2d 1340 (Fed. Cir. 1983) .................................................... 10

In re Swanson, 540 F.3d 1368 (Fed. Cir. 2008) ............................................................................... 4

Magna Donnelly Corp. v. Pilkington N. Am., Inc., 4:06-CV-126, 2007 WL 772891 (W.D. Mich.
Mar. 12, 2007) ................................................................................................................. 7

Nanometrics, Inc. v. Nova Measuring Instruments, Ltd., C 06-2252SBA, 2007 WL 627920 (N.D.
Cal. Feb. 26, 2007) .......................................................................................................... 8

Pass & Seymour, Inc. v. Hubbell Inc., 532 F. Supp. 2d 418 (N.D.N.Y. 2007) ......................... 5, 6

PBI Performance Products, Inc. v. NorFab Corp., CIVA 05-4836, 2007 WL 81065 (E.D. Pa. Jan.
5, 2007) ............................................................................................................................. 6

Photoflex Products, Inc. v. Circa 3 LLC, C 04-03715 JSW, 2006 WL 1440363 (N.D. Cal. May
24, 2006) ........................................................................................................................... 8

Softview Computer Products Corp. v. Haworth, Inc., 97 CIV. 8815 KMW HBP, 2000 WL
1134471 (S.D.N.Y. Aug. 10, 2000) .............................................................................. 5, 9

Yodlee, Inc. v. Ablaise Ltd., C-06-07222 SBA, 2009 WL 112857 (N.D. Cal. Jan. 16, 2009) .... 10

**Federal Statutes**

35 U.S.C. § 302 ............................................................................................................. 3

35 U.S.C. § 303 ............................................................................................................. 3

35 U.S.C. § 305 .......................................................................................................... 4, 8

35 U.S.C. § 307 ............................................................................................................. 4

**Patents**

U.S. Patent No. 5,827,178 .................................................................................... passim

**Federal Regulations**

37 C.F.R. § 1.510 .......................................................................................................... 3

37 C.F.R. § 1.535 .......................................................................................................... 8

37 C.F.R. § 1.550 ....................................................................................................... 4, 8

## I.   INTRODUCTION

The Patent upon which this case is based may well be invalid. Because it may be invalid, Verathon has asked the U.S. Patent & Trademark Office to re-examine it. If the PTO does agree to re-examine it, and they almost certainly will, we will know in a just a few weeks. Waiting a few more weeks will prejudice no one, but could save this court and the parties considerable wasted effort proceeding on the basis of a patent that may well be dramatically altered, or vanish altogether.

### A.   LITIGATION – EARLY & NOT URGENT

There is certainly no urgency to the litigation. Plaintiff first "invited" Verathon to license his patent in 2003, over seven years ago. Then, since filing its Complaint, Plaintiff has acquiesced in a further three and a half months' delay before all defendants answered. Even now, the initial pleadings are not complete. No initial conference of the parties has taken place; no scheduling order has issued; no discovery has occurred.

### B.   THE PTO WILL DECIDE VERY QUICKLY WHETHER TO RE-EXAMINE THE PATENT

Based on PTO statistics, this Court can reasonably expect that the PTO will decide by December 20. Thus, if this stay is granted (even in the extremely unlikely event the PTO denies the Request), the further delay for Plaintiff will most likely be only about 35 more days.

### C.   PTO RE-EXAMINATION IS HIGHLY LIKELY, POTENTIALLY ELIMINATING THE CASE

Ninety-two percent **(92%)** of third-party initiated re-examinations are granted. Of those granted Requests of re-exams initiated by a third party, 75% result in cancellation or amendment of claims.

Under all these circumstances, a stay is appropriate.

This motion is based on the underlying points and authorities as well as the supporting Declaration of Joel B. Ard and exhibits thereto.

## CERTIFICATE OF CONFERENCE

Verathon certifies that a conference was held between its counsel and counsel for Plaintiff, David Loewenstein, on November 15, 2010. Counsel for Plaintiff stated that he opposed stay of the case pending reexamination. <u>See</u> Ard Dec. ¶ 6.) Verathon further certifies that it conferred with counsel for defendants Storz, Pentax, and LMA, none of whom intend to oppose this Motion. <u>See</u> Ard Dec. ¶¶ 7-9.

## II.  ARGUMENT

### A.  LITIGATION PROCEDURAL POSTURE & BACKGROUND

This patent infringement action was filed by Berall on August 3, 2010, over seven years after the onset of desultory and periodic discussions with Verathon and its predecessor entity beginning at least as early as 2003. The Complaint included claims against other defendants, including Airtraq LLC, ("Airtraq"), Pentax of America, Inc. ("Pentax"), Karl Storz Endoscopy-America, Inc. ("Storz"), Aircraft Medical Ltd., ("Aircraft"), and LMA North America, Inc. ("LMA"). The complaint alleged only a single cause of action – infringement of U.S. Patent No. 5,827,178 ("the '178 Patent"). To date, Berall has dismissed Airtraq LLC. Berall has also agreed to various extensions of time to LMA and Aircraft so that those parties have not yet answered the Complaint. No initial conference of the parties has taken place, no scheduling order has been issued, and no discovery has been served.

### B.  REQUEST FOR REEXAMINATION OF THE '178 PATENT – PENDING PTO DECISION

On October 29, 2010, long before all responsive pleadings were filed in this case, Verathon filed a request for <u>ex parte</u> reexamination of all claims of the '178 Patent.

Reexamination is a procedure by which any person can request that the PTO reevaluate the patentability of an unexpired patent. See 35 U.S.C. §§ 302, 303. A request for patent reexamination must be based upon prior art patents or publications that raise "a substantial new question of patentability." See 35 U.S.C. § 303(a). Verathon requested that the PTO reexamine and cancel all claims of the '178 Patent pursuant to 35 U.S.C. § 302 and 37 C.F.R. § 1.510. In the Request for Reexamination, Verathon submitted six prior art references, none of which was previously considered by the PTO in allowing the '178 Patent, and each of which raises substantial new questions of patentability for the claims of the '178 Patent.

### C.  REQUESTS FOR REEXAMINATION ARE ALMOST ALWAYS GRANTED, & QUICKLY

Significantly, an overwhelming percentage of reexamination requests – 92% since 1981 – are granted. See Ard Dec. Ex. C line 5a.

The PTO is required to determine whether such a substantial new question of patentability is raised, and thus whether to initiate reexamination proceedings, within 90 days of the filing date of the request. See 35 U.S.C. § 303(a). Currently, the Office makes that determination, on average, in about half the statutory maximum: 1.7 months, or 51 days from the filing date of the request for re-examination. See Ard Dec. Ex. B, "Timing of proceedings – Average Months to Ex Parte Order – Q4." Thus, it is likely that the decision to initiate a re-examination will be made around Monday, December 20, 2010[1], and a decision is statutorily mandated no later than Monday, January 31, 2011.

---

[1] For perspective, this is about 1.5% of the 2836 days Plaintiff has already allowed to elapse since first contacting Verathon.

### D.  REEXAMINATION – CLAIMS ARE USUALLY CANCELLED OR MODIFIED

Fully three quarters (75%) of third party-initiated ex parte reexaminations lead to the cancellation or amendment of patent claims. See Ard Dec. Ex. C lines 10b(2) and 10b(3).

Once a reexamination request is granted, a patent examiner familiar with the technology involved with the patent conducts the reexamination. The examiner is obligated to do so "with special dispatch." 35 U.S.C. § 305; 37 C.F.R. § 1.550(a). Where litigation is stayed pending reexamination, the proceeding "will be expedited to the extent possible." See Canady v. Erbe Elektromedizin GmbH, 271 F. Supp. 2d 64, 76 (D.D.C. 2002).

In reexamination, the PTO uses different standards and procedures from those used by the courts. The PTO "is not attacking the validity of the patent but is conducting a subjective examination of the claims in light of prior art," and the patent owner is free to amend claims to preserve validity over the newly identified prior art. Thus, the presumption of validity used by the courts is not applicable in a reexamination proceeding, and the standard of proof – a preponderance of evidence – is substantially lower than the "clear and convincing evidence" standard in litigation. In re Swanson, 540 F.3d 1368, 1377 (Fed. Cir. 2008). Thus, as a practical matter, claims tend to be either narrowed or cancelled during reexamination. Importantly, a decision by the Patent Office that the reexamined claims of an issued patent are canceled as unpatentable renders the claims unenforceable in the pending litigation and in any future disputes. See 35 U.S.C. § 307(a).

### E.  LIBERAL STANDARD FOR STAYS PENDING REEXAMINATION

"Although the reexamination procedure does not provide for an automatic stay of pending district court proceedings involving the same claims . . . there is no question that a district court in which an infringement action has been filed has the discretion to stay the infringement action pending the outcome of the reexamination proceeding." <u>Softview Computer Products Corp. v. Haworth, Inc.</u>, 97 CIV. 8815 KMW HBP, 2000 WL 1134471 at *2 (S.D.N.Y. Aug. 10, 2000); <u>see also</u> <u>Ethicon, Inc. v. Quigg</u>, 849 F.2d 1422, 1426 – 27 (Fed. Cir. 1988). A court also has the authority to stay the litigation pending the PTO's consideration of a request for reexamination, as the court ordered in <u>Pass & Seymour, Inc. v. Hubbell Inc.</u>, 532 F. Supp. 2d 418 (N.D.N.Y. 2007). One district court explained the value of such a decision as follows:

> During the course of a stay, the court retains jurisdiction to respond to changing factual circumstances with appropriate orders. Thus, if a stay is granted prior to the decision from the Patent Office as to whether a substantial new question of patentability exists, the court can issue an order lifting the stay upon a negative determination, thereafter deciding all pending motions and, if necessary, proceeding to trial.

<u>Broad. Innovation, L.L.C. v. Charter Commc'n, Inc.</u>, CIV A03-CV2223ABJBNB, 2006 WL 1897165 at *2 (D. Colo. July 11, 2006). Indeed, especially where the motion for stay is presented early in proceedings, courts regularly stay litigation at least until the PTO makes it reexamination decision. <u>Pass & Seymour</u>, <u>supra</u>, is especially instructive. There, the defendant sought re-examination promptly, as did Verathon here, and notified the court of the pending request and sought a stay prior to the PTO's determination that it would grant the request. The court stayed the litigation, noting that:

> this case is plainly in its infancy, the court not yet having conducted a Rule 16 conference or issued a case management scheduling order, thus <u>presenting a very different situation than in many other circumstances where stays have been denied as having been sought too late in the litigation</u>.

Pass & Seymour, 532 F. Supp. 2d at 435 (emphasis added). Here, the procedural posture favors a stay even more so than in Pass & Seymour, where the court had already allowed some discovery: in this case, not all defendants have yet even answered the complaint. Other courts have also granted stays prior to the PTO decision to initiate a re-examination, even where the litigation has progressed far further than this case. See, e.g., Cross Atl. Capital Partners, Inc. v. Facebook, Inc., 07-2768, 2008 WL 3889539 at *3 (E.D. Pa. Aug. 18, 2008) ("granting the stay at least until the PTO makes its initial determination whether to conduct the reexamination" despite the case having been pending a year); PBI Performance Products, Inc. v. NorFab Corp., CIVA 05-4836, 2007 WL 81065 at *1 (E.D. Pa. Jan. 5, 2007) (placing case on suspense docket pending outcome of PTO decision); see also Softview, 2000 WL 1134471 at *3 (staying case after grant of re-exam "although there has been a great deal of activity in this litigation to date" including substantial discovery and "extremely voluminous summary judgment motions").

These decisions reflect the "liberal policy in favor of granting motions to stay proceedings pending the outcome of reexamination proceedings." Broad. Innovation, 2006 WL 1897165 at *4.

**F.  ALL FACTORS WEIGH HEAVILY IN FAVOR OF GRANTING A STAY**

When considering whether to stay patent infringement litigation pending a reexamination of the patent in suit, courts generally examine three factors, including "(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set." Pass & Seymour, 532 F. Supp. 2d at 435. Each of these factors weighs heavily in favor of a stay in this case.

1.   A Stay Will Not Unduly Prejudice Or Present A Clear Tactical Disadvantage

"This factor is best summarized by one question: *do the Plaintiffs have an adequate remedy at law?* Because they do, this factor weighs heavily in favor or staying the case. The Plaintiffs seek *only* monetary damages and for that reason, have an adequate remedy at law should they prevail on the merits." Broad. Innovation, 2006 WL 1897165 at *10 (emphasis in original). A patent owner's failure to seek a preliminary injunction in litigation suggests that its true aim is to obtain money damages and that it thus has an adequate remedy at law. See, e.g., Emhart Indus., Inc. v. Sankyo Seiki Mfg. Co., Ltd., 85 C 7565, 1987 WL 6314 at *2 (N.D. Ill. Feb. 2, 1987) ("notwithstanding plaintiff's argument that monetary damage will not compensate for its losses, this is a suit for money damages and plaintiff has never sought preliminary injunctive relief from the Court") (emphasis in original); Magna Donnelly Corp. v. Pilkington N. Am., Inc., 4:06-CV-126, 2007 WL 772891 at *5 (W.D. Mich. Mar. 12, 2007) ("despite Plaintiff's claims that delay would cause irreparable damage to its business, Plaintiff has not sought a preliminary injunction in this matter").

Plaintiff plainly has an adequate remedy at law. Although Plaintiff's prayer for relief in this case includes a request for injunctive relief, it is clear that Plaintiff's true aim is to obtain money damages. Indeed, Plaintiff even "invited" Verathon to take a license under the '178 Patent nearly eight years before it commenced the lawsuit. See Ard Dec. Ex. A. Plaintiff did not attempt to secure a preliminary injunction, but instead has allowed another over three months to pass before requesting answers from two defendants. Given the years of delay in filing the case, and the subsequent months' delay allowed thus far in prosecuting, there is a complete lack of irreparable harm. Plaintiff faces no prejudice by delay and will not be harmed by a stay during reexamination. Under these circumstances, Plaintiff cannot articulate a credible claim that it

cannot be adequately compensated for Verathon's alleged use of the '178 Patent by monetary damages, and so this factor weighs strongly in favor of a stay.

Further, courts have noted that granting a stay does not cause the nonmoving party undue prejudice when that party has not invested substantial expense and time in the litigation. Photoflex Products, Inc. v. Circa 3 LLC, C 04-03715 JSW, 2006 WL 1440363 at *1 (N.D. Cal. May 24, 2006). No such substantial time or expense has been invested here: apart from the complaint filed in August 2010 and, with Plaintiff's willing acquiescence or consent, answers filed by only some of the defendants, nothing has occurred in the case. Notably, two defendants have not yet even answered the Complaint. No scheduling conference has occurred nor has a scheduling order issued.

"Mere delay, without more though, does not demonstrate undue prejudice. Assuming the PTO does not cancel or substantively change the ['178] patent, [plaintiff's] potential recovery of damages will not be affected by the re-examination proceeding." Nanometrics, Inc. v. Nova Measuring Instruments, Ltd., C 06-2252SBA, 2007 WL 627920 at *3 (N.D. Cal. Feb. 26, 2007). Indeed, courts have noted that reexamination does not threaten protracted or indefinite delay as the reexamination statute directs the PTO to conduct reexamination proceedings with "special dispatch." 35 U.S.C. § 305; 37 C.F.R. § 1.550(a). Moreover, "where litigation is stayed pending a decision by the PTO, reexamination proceedings will be expedited to the extent possible." Canady, 271 F. Supp. 2d at 76 (citing 37 C.F.R. § 1.535).

In analyzing undue prejudice, courts consider whether the patent owner could be made whole for any delay by monetary damages. Where the patent owner has an adequate remedy at law, a stay pending reexamination does not present a prejudice because damages continue to accrue during the stay. "If the patent is ultimately found to be valid and infringed, [the alleged

infringer] will be responsible to [patent owner] for damages – perhaps treble damages, 35 U.S.C. § 284 – for all the infringing mechanisms that it has sold. Thus, it does not appear that staying the action will result in an financial damage to" patent owner. <u>Softview</u>, 2000 WL 1134471 at *3.

2.   <u>A Stay Will Simplify The Issues In Question And Trial Of The Case</u>

This court has recognized that a stay pending reexamination may simplify the issues in a number of ways:

> The following advantages have been found to result from a stay of district proceedings pending completion of reexamination proceedings:
>
> 1. All prior art presented to the Court will have been first considered by the PTO, with its particular expertise.
>
> 2. Many discovery problems relating to prior art can be alleviated by the PTO examination.
>
> 3. In those cases resulting in effective invalidity of the patent, the suit will likely be dismissed.
>
> 4. The outcome of the reexamination may encourage a settlement without further use of the Court.
>
> 5. The record of the reexamination would likely be entered at trial, thereby reducing the complexity and length of the litigation.
>
> 6. Issues, defenses, and evidence will be more easily limited in pre-trial conferences after a reexamination.
>
> 7. The cost will likely be reduced both for the parties and the Court.

<u>Softview</u>, 2000 WL 1134471 at *2. As the <u>Softview</u> court concluded, "a stay will necessarily simplify the issues. If the reexamination proceeding invalidates or narrows a claim or claims, the issues at trial will be simplified. Similarly, if the reexamination proceeding reaffirms all the claims as issued, the Court will then have the benefit of the PTO's expert analysis of the prior art that allegedly invalidates or limits the claims." <u>Id</u>. at *3. In addition, the technical expertise

provided by the reexamination proceeding will be helpful to the Court on any issues that remain. "One purpose of the reexamination procedure is to eliminate trial of that issue (when the claim is canceled) or to facilitate trial of that issue by providing the district court with the expert view of the PTO (when a claim survives the reexamination proceeding)." Gould v. Control Laser Corp., 705 F.2d 1340, 1342 (Fed. Cir. 1983).

As noted above, it is highly likely that some or all of the claims of the '178 Patent will be amended or cancelled during the reexamination proceedings. 75% of third – party initiated re-examinations result in cancellation or amendment of patent claims. See Ard Dec. Ex. C lines 10b(2) and 10b(3). And because the '178 Patent is the only patent for which Plaintiff claims infringement against Verathon and the other defendants, the reexamination has a particularly strong chance of completely resolving the entire litigation and obviating the need to try infringement in this case – not to mention validity and damages. This weighs strongly in favor of a stay. See, e.g., eSoft, Inc. v. Blue Coat Sys., Inc., 505 F. Supp. 2d 784, 788 (D. Colo. 2007) ("if reexamination leads to the cancellation of the '673 Patent's claims, then Plaintiff's case will evaporate"); Yodlee, Inc. v. Ablaise Ltd., C-06-07222 SBA, 2009 WL 112857 at *5 (N.D. Cal. Jan. 16, 2009) ("the only issue that requires adjudication relates to the validity of the '737 patent, which is precisely the issue before the PTO");

Co-defendants Storz, Pentax, and LMA have affirmatively stated that they do not oppose a stay pending reexamination. See Ard Dec. ¶¶ 7-9. This makes it even more likely that the reexamination outcome will completely dispose of the case. This factor weighs strongly in favor of a stay.

3.   <u>The Early Stage Of The Litigation Greatly Favors Stay</u>

The final factor, whether discovery has been completed and the case is ready for trial, also weighs strongly in favor of stay in this case, where not all answers have been filed, no conferences have been held, no scheduling order has issued, and no discovery has occurred. If the stay is unlikely to prejudice the plaintiff and the motion for stay comes early in the case, courts generally look favorably on granting stays pending reexamination.

Very little has been done in this case. After filing the patent infringement action on August 3, 2010, Berall has acquiesced in over three months of delay in seeking Answers to the Complaint from two defendants. No scheduling conference has taken place; no scheduling order has been issued; no discovery has commenced.

Among the many similarly situated cases where courts have granted a stay pending reexamination, <u>Pass & Seymour</u>, 532 F. Supp. 2d 418, is highly analogous. In that case, P&S filed suit for patent infringement against Hubbell on March 13, 2007. Hubbell sought reexamination of the asserted patents on April 11, 2007 and May 8, 2007, and promptly moved for a stay, before the PTO had determined whether to initiate re-examination.

In granting Hubbell's motion and staying the case pending reexamination, the Court rejected P&S's claim that it would be unduly prejudiced by delay. The court noted the many articulated advantages of reexamination as a means of simplifying and streamlining trial, particularly relying on the PTO expertise, even if the patent claims were not ultimately cancelled or amended. As to the final factor, as in this case, the court was persuaded by Hubbell's prompt diligence in seeking reexamination and stay, noting that the suit was procedurally at early stages, with no scheduling conference or order yet issued. Similarly, in this case, within three months

after being served, after an opportunity locate highly relevant prior art, Verathon filed a request for reexamination, and twenty days thereafter its motion for stay.

### G.  JUDICIAL AND PARTY RESOURCES WILL BE CONSERVED BY A STAY

The PTO will likely complete its initial review of the re-examination request and either grant or deny it within the next 40 days; and it is statutorily required to complete that first step no later than January 31, 2010. Verathon expects that, as in 92% of re-examination requests, the PTO will agree to initiate a re-examination. And, as has happened in 75% of ex parte re-examinations, the '178 Patent claims will likely either be cancelled or amended, eliminating or greatly simplifying this case, including necessary discovery efforts. To avoid unnecessary duplicative efforts and conserve judicial and party resources, Verathon respectfully submits that the Court should stay the proceeding pending reexamination until such time that the PTO either denies the request for reexamination or concludes the reexamination process.

DATED this 16th day of November, 2010.

Respectfully submitted,

s/ Richard C. Pettus
Richard C. Pettus
King & Spalding LLP (NYC)
1185 Avenue of the Americas
New York, NY 10036
(212) 556-2130
Fax: (212) 556-2222
Email: rpettus@kslaw.com

s/
Richard T. Black, Admitted Pro Hac Vice
Email: black@blacklaw.com
Lawrence D. Graham, Admitted Pro Hac Vice
Email: graham@blacklaw.com
Joel B. Ard, Admitted Pro Hac Vice
Email: ard@blacklaw.com
BLACK LOWE & GRAHAMPLLC

701 Fifth Avenue, Suite 4800
Seattle, WA 98104
T: 206.381.3300
F: 206.381.3301

Attorneys for Defendant
Verathon, Inc.

## CERTIFICATE OF SERVICE

On November 16, 2010, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Southern District of New York, using the electronic case filing system of the court. I hereby certify that I have served all counsel and/or pro se parties of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5 (b)(2).


                                        s/ Richard C. Pettus