IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JONATHAN BERALL, M.D., M.P.H.,<br><br>Plaintiff,<br><br>v.<br><br>VERATHON INC., PENTAX OF AMERICA, INC., HOYA DIGITAL SOLUTIONS CORP., and, TELEFLEX MEDICAL INCORPORATED,<br><br>Defendants. | Civil Action No.: 1:10-cv-05777-LAP-DCF |

**DEFENDANT TELEFLEX MEDICAL INCORPORATED'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Dated:  February 12, 2021

# TABLE OF CONTENTS

I. Introduction ................................................................................................................. 1
II. Issue Presented ........................................................................................................... 2
III. Background ................................................................................................................ 3
    A. Procedural Background .................................................................................. 3
    B. The Allegations Against Aircraft and LMA .................................................. 4
    C. The Aircraft/Berall Settlement Agreement .................................................... 4
IV. Legal Standard ........................................................................................................... 6
    A. Summary Judgment ....................................................................................... 6
    B. Doctrine of Patent Exhaustion ....................................................................... 6
V. Argument ................................................................................................................... 7
    A. Berall Authorized Aircraft's Past Sales of the Aircraft Accused Products ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ............................................................. 7
    B. Patent Exhaustion Precludes Berall from Asserting His Patent Against a Downstream Customer Following the Authorized Sale of a Product .................. 10
        1. Courts Have Repeatedly Held on Summary Judgment that a Patent Owner Can Retroactively Authorize Past Sales for Purposes of Patent Exhaustion ................................................................................................ 11
        2. It Is Irrelevant to the Patent Exhaustion Analysis that Berall Does Not Believe He Received a "Full Recovery" ................................................... 13
VI. Conclusion ............................................................................................................... 14

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby*,
    477 U.S. 242 (1986) .................................................................................................... 6

*Augustine Med., Inc. v. Progressive Dynamics, Inc.*,
    194 F.3d 1367 (Fed. Cir. 1999) ................................................................................ 7, 9

*Canon Inc. v. Tesseron Ltd.*,
    146 F. Supp. 3d 568 (S.D.N.Y. 2015) .................................................................. 10, 12

*Cascades Comput. Innovation, LLC v. Samsung Elecs. Co. Ltd.*,
    70 F. Supp. 3d 863 (N.D. Ill. 2014) .......................................................................... 13

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) .................................................................................................... 6

*ExcelStor Tech., Inc. v. Papst Lic'g GMBH & Co. KG*,
    541 F.3d 1373 (Fed. Cir. 2008) ................................................................................... 7

*High Point SARL v. T-Mobile USA, Inc.*,
    650 Fed. Appx. 917 (Fed. Cir. 2016) ............................................................... 8, 12, 13

*Hruska v. Chandler Assocs., Inc.*,
    372 N.W.2d 709 (Minn. 1985) .................................................................................... 9

*Impression Prods. v. Lexmark Int'l, Inc.*,
    137 S. Ct. 1523 (2017) ........................................................................................... 6, 14

*Keurig, Inc. v. Sturm, Foods, Inc.*,
    732 F.3d 1370 (Fed. Cir. 2013) ............................................................................... 6, 7

*Odens Fam. Props., LLC v. Twin Cities Stores, Inc.*,
    393 F. Supp. 2d 824 (D. Minn. 2005) ......................................................................... 9

*PSN Ill., LLC v. Abbott Labs. & Abbott Bioresearch Ctr., Inc.*
    2011 WL 4442825 (N.D. Ill. Sept. 20, 2011) ................................................ 8, 10, 12, 13

*Quanta Comput., Inc. v. LG Elecs., Inc.*,
    553 U.S. 617 (2008) ..................................................................................... 6, 9, 10, 13

*TransCore, LP v. Elec. Transaction Consultants Corp.*,
    563 F.3d 1271 (Fed. Cir. 2009) ................................................................... 8, 9, 11-13

**Rules**

Fed. R. Civ. P. 56 .............................................................................................................. 1, 6

Pursuant to Fed. R. Civ. P. 56, Defendant Teleflex Medical Incorporated ("Teleflex")[1] respectfully requests that the Court grant summary judgment of non-infringement based on patent exhaustion for the accused products that LMA North America, Inc. ("LMA") distributed for Aircraft Medical, Ltd. ("Aircraft") (collectively, the "Aircraft Accused Products").

## I.   INTRODUCTION

Plaintiff Jonathan Berall, M.D., M.P.H. ("Berall") accused LMA of infringing U.S. Patent No. 5,827,178 ("the '178 patent" or "the patent-in-suit") based on LMA's distribution of the Aircraft Accused Products. (Dkt. 193, ¶ 90). On August 12, 2019, however, Berall exhausted any rights to assert the patent-in-suit against Aircraft's downstream customers of the Aircraft Accused Products ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. (Ex. A,[2] "Aircraft/Berall Settlement Agreement"). Under the doctrine of patent exhaustion, Berall cannot continue to assert his patent against Aircraft's customers, including LMA, for the downstream distribution or use of the Aircraft Accused Products.

On July 30, 2010, Berall brought this action against Aircraft, LMA, and other defendants alleging infringement of the '178 patent. (Dkt. 1). With respect to Aircraft, Berall alleged that Aircraft infringed the '178 patent based on its manufacture and sale of "products that practice the inventions of the '178 Patent, including, for example, the McGrath Series 5 video laryngoscope." (Dkt. 1, ¶ 30). With respect to LMA, Berall alleged that "LMA, *as exclusive United States distributor for Aircraft* . . . , uses, offers to sell, imports, and/or sells within the United States . . . , products that practice the inventions of the '178 Patent, including, for example, the McGrath Series

---

[1] On January 19, 2021, the Court ordered the substitution of Teleflex Medical Incorporated for LMA North America, Inc. (Dkt. 234).
[2] Ex. A is attached to the declaration of Jonathan R. Wise, filed concurrently herewith.

5 video laryngoscope." (Dkt. 1, ¶ 34, Dkt. 193, ¶ 90 (emphasis added)). Several years later, ▇▇ ▇▇▇▇▇▇▇▇▇▇, Berall and Aircraft entered into the Aircraft/Berall Settlement Agreement. (Dkt. 128). Under this agreement, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇, Berall authorized Aircraft's past sales of the Aircraft Accused Products. Yet, Berall continues to assert the '178 patent against LMA (or Teleflex) based on LMA's distribution ▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇ despite his authorization of Aircraft's past sales.

As a matter of law, Berall cannot continue his lawsuit against LMA (or Teleflex) because he exhausted his rights to assert the '178 patent against customers downstream from Aircraft for the sale or use of the Aircraft Accused Products. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇, authorized Aircraft's past sales of the Aircraft Accused Products and automatically exhausted any patent rights to those products downstream of Aircraft. A decision to the contrary not only would conflict with established case law, but would permit Berall to sue every downstream seller or user of the Aircraft Accused Products by subsequently, arbitrarily claiming that he did not receive a "full recovery" from his negotiated settlement with the upstream manufacturer. That result cannot be correct in view of the longstanding doctrine of patent exhaustion. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇, Berall exhausted his rights to assert his patent against Aircraft's downstream customers ▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇. Accordingly, summary judgment of non-infringement based on patent exhaustion as to LMA's distribution of the Aircraft Accused Products should be granted.

II.   **ISSUE PRESENTED**

The issue for summary judgment is as follows:  Did Berall's authorization of Aircraft's past sales of the Aircraft Accused Products ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇,

███████████████████████████████████████████████████████ , exhaust his patent rights to the downstream sale or use of those products? The answer is yes, as explained herein.

## III.   BACKGROUND

### A. Procedural Background

On July 30, 2010, Berall filed this action against Defendants Verathon Inc., ("Verathon"), Pentax of America, Inc. ("Pentax"), Karl Storz Endoscopy-America, Inc., ("Storz"), Aircraft, LMA, and AirTraq, LLC, ("Airtraq"). In the Complaint, Berall asserted that the Defendants infringed the '178 patent entitled "Laryngoscope for Use in Trachea Intubation." (Dkt. 1). With respect to LMA, Berall alleged that LMA's distribution of products for Aircraft infringed the '178 patent. (Dkt. 1, ¶ 34; Dkt. 193, ¶ 90). LMA has confirmed that it served as Aircraft's exclusive distributor of the Aircraft Accused Products from about 2006 to 2010. (Dkt. 213, ¶ 31).

On May 11, 2011, prior to any substantive proceedings in this action, the Court issued a stay pending an *ex parte* reexamination ("reexam"), which had been initiated by co-defendants Verathon and Pentax to address the validity of the '178 patent before the U.S. Patent and Trademark Office ("PTO"). (Dkt. 78). The PTO rejected all claims of the '178 patent as unpatentable on April 25, 2011. (Dkt. 78). On January 4, 2019, after almost eight years of proceedings, the U.S. Patent Trial and Appeal Board reversed the PTO's decision that claims 1-15 of the '178 patent were unpatentable. *Ex Parte Jonathan Berall Appellant, Patent Owner,* 2019 WL 140713 (P.T.A.B. Jan. 4, 2019). LMA was not involved in the reexam proceedings before the PTO. The '178 patent expired on January 2, 2017.

To date, Berall's claims against defendants AirTraq, Storz, and Aircraft have been dismissed pursuant to stipulations. Storz and Aircraft entered into settlement agreements with Berall (Dkts. 38, 87, 128), while AirTraq was voluntarily dismissed from the case without a

settlement. (Dkt. 27). On August 23, 2019, ▬▬▬▬▬ after entering into the Aircraft/Berall Settlement Agreement, Aircraft and Berall stipulated to Aircraft's dismissal from the case with prejudice (Dkt. 127), which the Court ordered on August 26, 2019. (Dkt. 128). The Court lifted the stay with respect to LMA on December 1, 2020. (Dkt. 207).

### B. The Allegations Against Aircraft and LMA

In the Original Complaint, Berall's allegation of infringement against Aircraft was as follows:

> 30. Aircraft makes, uses, offers to sell, imports and/or sells within the United States, and/or actively induces others to make, use, offer to sell, import, and/or sell within the United States, products that practice the inventions of the '178 Patent, including, for example, the McGrath Series 5 video laryngoscope.

(Dkt. 1, ¶ 30). In other words, Berall accused Aircraft of infringement based on its conduct that included the making and selling of the Aircraft Accused Products.

Berall accused LMA of infringement based on LMA's distribution of Aircraft Accused Products. Specifically, Berall's allegation of infringement against LMA was as follows:

> 90. On information and belief, LMA, as exclusive United States distributor for Aircraft of video laryngoscopes, uses, offers to sell, imports, and/or sells within the United States, and/or actively induces others to make, use, offer to sell, import, and/or sell within the United States, products that practice the inventions of the '178 Patent, including, for example, the McGrath Series 5 video laryngoscope.

(Dkt. 1, ¶ 34 (original complaint); Dkt. 193, ¶ 90 (amended complaint)). LMA has admitted that it served as Aircraft's exclusive distributor in the United States from about 2006 to 2010. (Dkt. 213, ¶ 31). LMA has also pled an affirmative defense of patent exhaustion. (Dkt. 213, ¶ 100).

### C. The Aircraft/Berall Settlement Agreement



4

REDACTED



## IV. LEGAL STANDARD

### A. Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To prevail, the movant must show the absence of a genuine issue of material fact with respect to an essential element of the non-moving party's claim, or to a defense on which the non-moving party will bear the burden of persuasion at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this showing, the burden shifts to the party opposing summary judgment to identify "specific facts showing there is a genuine issue for trial." *Id*. at 324. The party opposing summary judgment must then present affirmative evidence from which a jury could return a verdict in that party's favor. *Anderson v. Liberty Lobby*, 477 U.S. 242, 257 (1986).

### B. Doctrine of Patent Exhaustion

The doctrine of patent exhaustion provides that an "initial authorized sale of a patented item terminates all patent rights in that item." *Quanta Comput., Inc. v. LG Elecs., Inc.*, 553 U.S. 617, 625 (2008). As the Supreme Court has explained, when a patent owner authorizes the sale of a patented item, that item "passe[s] outside of the patent monopoly" and cannot form the basis of an infringement claim. *See Impression Prods. v. Lexmark Int'l, Inc.*, 137 S. Ct. 1523, 1533 (2017) ("[W]hatever rights [the patentee] retained are a matter of the contracts with its purchasers, not the patent law."). Put another way, if the patentee has authorized the sale of products upon which an infringement claim is based, then the patentee cannot maintain this infringement claim as a matter of law. *Keurig, Inc. v. Sturm, Foods, Inc.*, 732 F.3d 1370, 1373-75 (Fed. Cir. 2013) (finding that the patentee's "direct, induced, or contributory" infringement claims against third parties based on

exhausted products sold to customers cannot be maintained because it "would be contradictory to" the law and policy underlying patent exhaustion). Accordingly, patent exhaustion is an affirmative defense to patent infringement. *Keurig*, 732 F.3d at 1373; *ExcelStor Tech., Inc. v. Papst Lic'g GMBH & Co. KG*, 541 F.3d 1373, 1376 (Fed. Cir. 2008).

## V. ARGUMENT

Summary judgment of non-infringement based on patent exhaustion is appropriate here. As an initial matter, there is no genuine dispute of material fact. Berall accused Aircraft of infringing the '178 patent due to Aircraft's manufacture and sale of the Aircraft Accused Products. (Dkt. 1, ¶ 30). Berall also accused LMA of infringing the '178 patent due to LMA's distribution of the Aircraft Accused Products. (Dkt. 1, ¶ 34; Dkt. 193, ¶ 90). LMA does not dispute that it distributed the Aircraft Accused Products. (Dkt. 213, ¶ 31). ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬. As the sole patent owner, Berall authorized those past sales ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬. *Id*. The only issue that remains is a legal one—whether Berall's authorization of Aircraft's past sales of the Aircraft Accused Products ▬▬▬▬▬▬▬ exhausted his rights to assert the '178 patent against Aircraft's downstream customers, including LMA, for alleged infringement of those products.

### A. Berall Authorized Aircraft's Past Sales of the Aircraft Accused Products ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

A settlement agreement is a contract, and contract interpretation is a question of law. *Augustine Med., Inc. v. Progressive Dynamics, Inc.*, 194 F.3d 1367, 1370, 1374 (Fed. Cir. 1999) (applying Minnesota contract law and holding that because the contract language was clear, extrinsic evidence presented by the parties did not need to be considered by the court). Here, the language is clear. Under the Aircraft/Berall Settlement Agreement, ▬▬▬▬▬▬▬▬▬▬▬

7



*See id.* The Federal Circuit has explained that the substance of an agreement should determine whether an "authorization" of the sale occurred, as opposed to whether the agreement is framed as a type of "license" or "covenant." *TransCore, LP v. Elec. Transaction Consultants Corp.*, 563 F.3d 1271, 1276 (Fed. Cir. 2009). Applying *TransCore*, in *PSN Ill., LLC v. Abbott Labs. & Abbott Bioresearch Ctr., Inc.*, the court held that a release containing broad, unconditional language was an authorization of past sales for purposes of patent exhaustion. 2011 WL 4442825 (N.D. Ill. Sept. 20, 2011). Specifically, in *PSN*, the patent owner released the upstream manufacturer of "all acts that would otherwise be infringing." *Id.* at *10. The court explained that the release authorized past sales for purposes of patent exhaustion because it "contains no restrictions or limitations upon sales." *Id.* Here, like in *PSN*, the

Similarly, in *High Point SARL v. T-Mobile USA, Inc.*, the Federal Circuit held that a product sale is "authorized" when a patent owner surrenders his right to exclude and "thereby immunizes the seller of that product from infringement liability." 650 Fed. Appx. 917, 929 (Fed. Cir. 2016)

(citing *TransCore*, 563 F.3d at 1275 and *Quanta*, 553 U.S. at 636). ███████████

████████████████████████████

██████████████████████. As such, ████████████████████████████████, Berall authorized Aircraft's past sales of the Aircraft Accused Products.

Any attempts by Berall to now argue that he did not "intend" to exhaust his patent rights with respect to downstream sales or uses must be rejected as contrary to the plain language of the agreement and the applicable case law. *See Augustine Med.*, 194 F.3d at 1370, 1373 (holding that plaintiff's failure to "make manifest" its intent in the settlement agreement to leave open certain infringement claims could not overcome the unambiguous language of the release). ████

████████████████████████████

████████████████████████████

████████████████████████████

████████████████████████████

███████████████████████ "[w]here a contract is reduced to writing and is a final integration of the parties' intentions, the parol evidence rule applies. . . . If a writing is clear and unambiguous on its face, the Court will 'not [be] obliged to look beyond the face of the written contract.'" *Odens Fam. Props., LLC v. Twin Cities Stores, Inc.*, 393 F. Supp. 2d 824, 828 (D. Minn. 2005) (quoting *Wessels, Arnold & Henderson v. Nat'l Med. Waste. Inc.*, 65 F.3d 1427, 1435 (8th Cir. 1995)). That is, parol evidence is only permitted under exceptional circumstances, including when the agreement is ambiguous and when the agreement intentionally misstates the true consideration to deceive a third party. *Hruska v. Chandler Assocs., Inc.*, 372 N.W.2d 709, 713 (Minn. 1985). None of these exceptions apply.

In sum, ████████████████████████████████████████,

Berall authorized Aircraft's past sales of the Aircraft Accused Products. ████████████.

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████

### B. Patent Exhaustion Precludes Berall from Asserting His Patent Against a Downstream Customer Following the Authorized Sale of a Product

Under the doctrine of patent exhaustion, Berall cannot recover any damages for sales of any Aircraft Accused Product, made after the initial sale from Aircraft to LMA. *See Quanta*, 553 U.S. at 625, 636. Specifically, an initial ***authorized*** sale of a product "terminates all patent rights" to that product, including the future right to bring an action for patent infringement against downstream sales and/or uses of that product. *Id.* at 625. In this regard, as explained below (*infra* § V.B.1.), courts have recognized that release provisions and retroactive licenses in settlement agreements can authorize past sales and thereby terminate a patent owner's future rights to that product. *See PSN*, 2011 WL 4442825 at *7-9 (finding that a plaintiff who released an upstream manufacturer from past sales of a product was later barred from recovering damages from downstream customers who sold the same product under the doctrine of patent exhaustion); *see also, Canon Inc. v. Tesseron Ltd.*, 146 F. Supp. 3d 568, 580-81 (S.D.N.Y. 2015) (confirming that patent exhaustion applied to past sales that had been released through a retroactive sublicense).



████████████ As discussed above (*supra* § V.A.), ████████████, Berall—the sole owner of the '178 patent—authorized Aircraft's past sales of the Aircraft Accused Products. █

███████████████████████████████

███████████████████████████████

As a result, Berall exhausted any of his patent rights over these products downstream, including the products sold by Aircraft to LMA. Under the doctrine of patent exhaustion, Berall cannot seek further recovery with respect to ███████████████ downstream from Aircraft. To allow Berall any further recovery for these past sales would improperly amount to a double recovery for Berall. *See PSN*, 2011 WL 4442825 at *9 (concluding that the doctrine of patent exhaustion applied to authorized past sales because, *inter alia*, it is "not reasonable to allow [patent owner] to seek a double recovery by later going after [downstream] customers").

   1. **Courts Have Repeatedly Held on Summary Judgment that a Patent Owner Can Retroactively Authorize Past Sales for Purposes of Patent Exhaustion**

Case law supports that releases and retroactive licenses can "authorize" past sales for the purposes of patent exhaustion, and such a ruling is appropriate on summary judgment. Indeed, in *TransCore*, the Federal Circuit provided guidance on how to assess patent exhaustion based on settlement agreements. 563 F.3d at 1276. In *TransCore*, the Federal Circuit affirmed summary judgment and held that a settlement agreement, which provided a covenant not to sue to a competitor for all future infringement claims, had authorized downstream sales by exhausting the patents with respect to downstream purchasers. *Id*. While past sales were not at issue in *Transcore*, the Federal Circuit made clear that the correct analysis for patent exhaustion must focus on whether the sales at issue were ***authorized*** based on the agreement. *Id*. According to the Federal Circuit, "[t]he real question, then, is not whether an agreement is framed in terms of a 'covenant not to sue' or a 'license.' That difference is only one of form, not substance--both are properly viewed as 'authorizations.'" *Id*.

The Federal Circuit applied its *Transcore* guidance in *High Point*, where it affirmed summary judgment of non-infringement based on patent exhaustion for past sales that were authorized through a retroactive license. 640 Fed. Appx. at 922. As such, the Federal Circuit has confirmed that past sales can be retroactively authorized for patent exhaustion. *Id.*

District courts have also applied patent exhaustion to past sales. In fact, this Court has granted summary judgment and confirmed that past sales can be retroactively authorized when it held that a 2015 sublicensing agreement retroactively authorized allegedly infringing sales from 2013, exhausting the patent owner's rights. *Canon*, 146 F. Supp. 3d at 574. In *Canon*, this Court held that the 2015 retroactive sublicense authorized past sales from 2013 for the purposes of patent exhaustion such that no additional license payments could be required from downstream customers. Because the 2013 sales were "authorized" by the retroactive sublicense, they were non-infringing due to patent exhaustion. *Id*. at 580.

Likewise, in *PSN*, the Northern District of Illinois has held that a release can retroactively authorize past sales for patent exhaustion. In *PSN*, the court granted summary judgment and confirmed that the release authorized sales that occurred prior to the agreement. 2011 WL 4442825, at *8-9. Specifically, the plaintiff and accused infringers entered into a 2008 settlement agreement, which included an unconditional release of liability for pre-2008 sales of accused products. *Id*. When the plaintiff subsequently asserted the same patents against downstream customers of the previously released parties and alleged that their pre-2008 use of the same accused products infringed the asserted patents, the district court applied *Transcore* and held that the 2008 release retroactively authorized the past sales for the purposes of patent exhaustion. *Id*. at *9-11.

The court granted summary judgment on the grounds that the patent owner's rights were retroactively exhausted as to the products covered by the release. *Id.* at *10.³

Like the authorization of past sales in *PSN*, *Canon*, and *High Point*, the Aircraft/Berall Settlement Agreement  . *See Quanta*, 553 U.S. at 625; *Transcore*, 563 F.3d at 1276; *High Point*, 640 Fed. Appx. 917, 922; *Canon*, 146 F. Supp. 3d at 581; *PSN*, 2011 WL 4442825, at *7-9. Accordingly, relevant case law confirms that past sales can and should be retroactively authorized for the purpose of patent exhaustion, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇.

### 2. It Is Irrelevant to the Patent Exhaustion Analysis that Berall Does Not Believe He Received a "Full Recovery"

To the extent that Berall now argues that he can continue to assert the '178 patent against LMA (or Teleflex) because he allegedly has not received a "full recovery" through his negotiated settlement with the upstream manufacturer, that argument is irrelevant for a patent exhaustion analysis. After there is an initial sale authorized by the patent owner, patent exhaustion automatically applies to downstream sales or uses of the authorized products. According to the Supreme Court:

> For over 160 years, the doctrine of patent exhaustion has imposed a limit on that right to exclude. *See Bloomer v. McQuewan*, 55 U.S. 539, 14 How. 539, 14 L. Ed. 532 (1853). The limit functions automatically: When a patentee chooses to sell an item, that product is no longer within the limits of the monopoly and instead becomes the private, individual property of the purchaser, with the rights and benefits that come along with ownership. A patentee is free to set the price and

---

³ *Cf. Cascades Comput. Innovation, LLC v. Samsung Elecs. Co. Ltd.*, 70 F. Supp. 3d 863, 866 (N.D. Ill. 2014). In *Cascades*, the court held that the patent exhaustion doctrine did not apply when, ▇▇▇▇▇▇ the settlement agreement contained a ***conditional*** release and discharge, and explicitly excluded co-defendants from a downstream benefit. *Id.*

13

negotiate contracts with purchasers, but may not, by virtue of his patent, control the use or disposition of the product after ownership passes to the purchaser. The sale terminates all patent rights to that item.

*Impression Prods.*, 137 S. Ct. at 1531. As such, the negotiated price paid for that initial authorized sale does not control whether patent exhaustion applies. Instead, patent exhaustion automatically applied when the sole patent owner, Berall, authorized Aircraft's sales of the Aircraft Accused Products to LMA. At that point, any patent rights to the products that were ▇▇▇▇▇▇▇ were exhausted and Berall has no basis or right to restrain the downstream use, sale, or enjoyment of those products. *See id*.

\*\*\*

There are no material facts in dispute. LMA admitted that it distributed Aircraft Accused Products that were the subject of the release provided to Aircraft. (Dkt. 213, ¶ 31). The ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇, Aircraft's past sales of the Aircraft Accused Products to LMA. (▇▇▇▇▇▇▇). Berall thereby exhausted any downstream patent rights he may have had to those products ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ and subsequently distributed by LMA. As a matter of law, summary judgment should be granted to Teleflex for LMA's sales of the Aircraft Accused Products. And as a matter of policy, if retroactive authorization and patent exhaustion were not permitted for past sales, a plaintiff would be able to sue any downstream customer by later arbitrarily alleging that a "full recovery" had not been obtained from a negotiated settlement with the upstream manufacturer—▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇.

## VI. CONCLUSION

For the reasons stated herein, Teleflex respectfully requests that the Court grant its Motion for summary judgment of non-infringement based on patent exhaustion of the accused products that LMA distributed for Aircraft (i.e., the Aircraft Accused Products).

14

Respectfully submitted,

**GREENBERG TRAURIG, LLP**

By: */s/ Jonathan R. Wise*
   Scott J. Bornstein
   Elana Araj
   200 Park Avenue
   New York, NY  10166
   (212) 801-9200
   bornsteins@gtlaw.com

   Jonathan R. Wise
   GREENBERG TRAURIG, LLP
   1717 Arch Street, Suite 400
   Philadelphia, PA 19103
   (215) 988-7850
   wisej@gtlaw.com

*Attorneys for Defendant*
*Teleflex Medical Incorporated*