UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JONATHAN BERALL, M.D., M.P.H.,

                    Plaintiff,

-against-

PENTAX OF AMERICA, INC., et
al.,

                    Defendants.

---

No. 10-CV-5777 (LAP)

MEMORANDUM & ORDER

LORETTA A. PRESKA, Senior United States District Judge:

Before the Court is the motion for judgment on the pleadings filed by Defendants Hoya Corp. ("Hoya"), Hoya Digital Solutions Corp. ("Hoya Digital"), and Pentax of America, Inc. ("Pentax," and together with Hoya and Hoya Digital, "Defendants").[1]  Plaintiff Jonathan Berall, M.D., M.P.H., opposed the motion.[2]  For the reasons below, the motion is GRANTED IN PART and DENIED IN PART.

---

[1] (See Defendants Hoya Corp., Hoya Digital Solutions Corp., and Pentax of America, Inc.'s Notice of Motion for Judgment on the Pleadings, dated Jan. 28, 2021 [dkt. no. 244]; see also Defendants Hoya Corp., Hoya Digital Solutions Corp., and Pentax of America, Inc.'s Memorandum of Law in Support of Motion for Judgment on the Pleadings ("Defs. Br."), dated Jan. 28, 2021 [dkt. no. 245]; Defendants Hoya Corp., Hoya Digital Solutions Corp., and Pentax of America, Inc.'s Reply Brief in Support of Motion for Judgment on the Pleadings, dated Feb. 18, 2021 [dkt. no. 261].)  Defendant Teleflex Medical, Inc., does not join the motion.

[2] (See Plaintiff Dr. Berall's Response to Hoya's Motion for Judgment on the Pleadings ("Pl. Opp."), dated Feb. 11, 2021 [dkt. no. 253].)

I.   **Facts**

Dr. Berall, an emergency-room physician, owns all right, title, and interest in United States Patent No. 5,827,178 ("the '178 Patent").  (See Amended Complaint ("FAC"), dated Nov. 10, 2020 [dkt. no. 193], ¶¶ 27, 45.)  The '178 Patent is entitled "Laryngoscope for Use in Trachea Intubation" and was issued by the United States Patent and Trademark Office ("PTO") on October 27, 1998.  (See Ex. 1 to FAC ("'178 Patent"), dated Oct. 27, 1998 [dkt. no. 193-1].)

The '178 Patent covers a laryngoscope, a medical device used for intubating an oxygen-providing tube into the trachea of a patient who is not breathing.  (See FAC ¶ 40.)  Dr. Berall's laryngoscope mounts a camera onto the blade in the vicinity of the distal end of the device, i.e., the end furthest from the operator.  (See id. ¶ 49.)  By virtue of the camera's location, the physician operating the laryngoscope has "a stable and unobstructed view of the patient's trachea."  (Id.)

In October 2000, about two years after he received the '178 Patent, "Dr. Berall attended the World Congress for Anesthesiologists in Montreal . . . for the purpose of publicizing his invention."  (Id. ¶ 81.)  While at the conference, Dr. Berall spoke with two Pentax employees about the '178 Patent and the technical details of his invention.  (See

id.)  Pentax was exhibiting its own "airway management" products

at the conference.  (Id.)

Hoya[3] manufactures "[t]he Airway Scope ('AWS') suite of

video laryngoscope products," including "at least the AWS-S100

and AWS-S200" models.  (Id. ¶ 56.)  Paragraphs 57 through 61 of

the First Amended Complaint ("FAC") describe the relevant

portions of the AWS laryngoscopes as follows:

> 57. AWS is a video laryngoscope that includes a
> handle connected to a plastic blade, which covers
> optics, including a video camera and a light. The
> camera of the AWS is connected to a video
> display. . . .
>
> 58. The blade of the AWS has a proximal end that
> is connected to the handle, and a distal end that
> projects laterally from the handle.
>
> 59. The AWS's charge-coupled device ("CCD")
> camera is located in the vicinity of the distal end of
> the blade (more particularly, near the tip of the
> laryngoscope), and observes a visual field in front of
> the camera.
>
> 60. The AWS's CCD camera is inserted into the
> blade such that it is encompassed by the blade and
> becomes a single unit, with the camera eye placed in
> the vicinity of the distal end of the blade.
>
> 61. The AWS display includes a lightweight built-
> in display mounted on the handle, which is connected
> to the AWS camera located near the tip of the blade,
> and displays the visual field that is observed by the
> camera.

---

[3] "In August 2007, Pentax became a subsidiary of Hoya Corp."
(FAC ¶ 66.)  Pentax "is a Delaware company" and "a wholly owned
subsidiary of Hoya."  (Id. ¶ 6.)

(Id. ¶¶ 57-61 (citations omitted).)  Dr. Berall alleges that "[t]he AWS video laryngoscope embodies at least claims 1-7, and 11-15 of the '178 Patent."  (Id. ¶ 72.)

Beginning in late 2007, Pentax sold the AWS laryngoscopes--first the AWS-S100 model, then the AWS-S200 model--in the United States.  (See id. ¶ 64.)  In 2012, Hoya transferred the sale of its AWS laryngoscopes to Hoya Service Corp., which Hoya eventually renamed Hoya Digital.[4]  After the transfer, Hoya Digital continued selling the AWS model laryngoscopes in the United States.  (See id. ¶ 69.)

On July 30, 2010, Dr. Berall filed the instant lawsuit against Pentax (but not Hoya or Hoya Digital).  (See Complaint, dated July 29, 2010 [dkt. no. 1].)  In response, Hoya (not Pentax) filed two ex parte petitions seeking reexamination of the '178 Patent.  (See FAC ¶¶ 33, 78.)  On May 11, 2011, this case was stayed pending the PTO's resolution of the reexamination proceedings.  (See Order, dated May 11, 2011 [dkt. no. 78] at 3.)

Eight years later, the PTO's Patent Trials and Appeals Board confirmed the patentability of claims 1-15 of the '178 Patent.  See Ex Parte Berall, No. 2018-008999, 2019 WL 140713, at *7 (P.T.A.B. Jan. 4, 2019).  The PTO issued a re-examination

---

[4] (See FAC ¶ 68.)  Hoya Digital "is a Japanese corporation" and "a wholly owned subsidiary of Hoya."  (Id. ¶ 7.)

certificate for the '178 Patent on July 16, 2019. (See Ex. 2 to
FAC ("Re-Exam Cert."), dated July 16, 2019 [dkt. no. 193-2].)

On October 1, 2020, the parties informed the Court that
mediation had not resolved Dr. Berall's claims against Pentax.
(See Joint Mediation Status Report, dated Oct. 1, 2020 [dkt. no.
176] at 1.)  On October 7, 2020, the Court lifted the stay as to
Pentax.  (See Order, dated Oct. 7, 2020 [dkt. no. 177] at 1.)
On November 12, 2020, Dr. Berall filed the FAC, asserting, inter
alia, claims of direct, contributory, induced, and willful
infringement against Pentax, Hoya, and Hoya Digital.  (See FAC
¶¶ 56-89.)  The instant motion followed.

## II.  **Legal Standards**

"In this patent case the [C]ourt applies the law of the
Federal Circuit to patent issues, and the law of its regional
circuit, the Second Circuit, to non-patent issues." Am. Tech.
Ceramics Corp. v. Presidio Components, Inc., 414 F. Supp. 3d
304, 307 (E.D.N.Y. 2019).

### a. **Rule 12(c)**

"In deciding a Rule 12(c) motion" for judgment on the
pleadings, the Court "employ[s] the same standard applicable to
dismissals pursuant to Rule 12(b)(6)." L-7 Designs, Inc. v. Old
Navy, LLC, 647 F.3d 419, 429 (2d Cir. 2011) (ellipsis and
alterations omitted).  "To survive a Rule 12(c) motion, [the]
complaint must contain sufficient factual matter, accepted as

true, to state a claim to relief that is plausible on its face."
Hayden v. Paterson, 594 F.3d 150, 160 (2d Cir. 2010).  "Specific
facts are not necessary; the statement need only give the
defendant fair notice of what the claim is and the grounds upon
which it rests."  Erickson v. Pardus, 551 U.S. 89, 93 (2007)
(per curiam) (cleaned up).  "On a 12(c) motion, the court
considers the complaint, the answer, any written documents
attached to them, and any matter of which the court can take
judicial notice for the factual background of the case."  L-7
Designs, 647 F.3d at 422 (quotation marks omitted).  The Court
"accept[s] all factual allegations in the complaint as true and
draw[s] all reasonable inferences in [Dr. Berall's] favor."
Hayden, 594 F.3d at 160.

### b. **Substantive Patent Law**

Under federal law, "whoever without authority makes, uses,
offers to sell, or sells any patented invention, within the
United States or imports into the United States any patented
invention during the term of the patent therefor, infringes the
patent."  35 U.S.C. § 271(a).  "Direct infringement under
§ 271(a) occurs where all steps of a claimed method are
performed by or attributable to a single entity," Akamai Techs.,
Inc. v. Limelight Networks, Inc., 797 F.3d 1020, 1022 (Fed. Cir.
2015) (en banc) (per curiam), and "the reach of section 271(a)
is limited to infringing activities that occur within the United

States," <u>MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.</u>, 420 F.3d 1369, 1375 (Fed. Cir. 2005).  An entity may be held responsible for directed infringement by another, however, "in two sets of circumstances: (1) where that entity directs or controls others' performance, and (2) where the actors form a joint enterprise." <u>Akamai</u>, 797 F.3d at 1022.  The Federal Circuit has "held that an actor is liable for infringement under § 271(a) if it acts through an agent (applying traditional agency principles) or contracts with another to perform one or more steps of a claimed method." <u>Id.</u> at 1023.

Section 271(b) provides a secondary theory of liability.[5] Under that provision, "[w]hoever actively induces infringement of a patent shall be liable as an infringer."  35 U.S.C. § 271(b).  "[I]nduced infringement under § 271(b) requires knowledge that the induced acts constitute patent infringement." <u>Glob.-Tech Appliances, Inc. v. SEB S.A.</u>, 563 U.S. 754, 766 (2011).  "[M]ere knowledge of possible infringement by others does not amount to inducement; specific intent and action to induce infringement must be proven." <u>DSU Med. Corp. v. JMS Co.</u>, 471 F.3d 1293, 1305 (Fed. Cir. 2006).  But a plaintiff need not

---

[5] "Indirect infringement, whether inducement to infringe or contributory infringement, can only arise in the presence of direct infringement . . . ." <u>Dynacore Holdings Corp. v. U.S. Philips Corp.</u>, 363 F.3d 1263, 1272 (Fed. Cir. 2004).

"prove its case at the pleading stage." <u>In re Bill of Lading Transmission & Processing Sys. Pat. Litig.</u>, 681 F.3d 1323, 1339 (Fed. Cir. 2012).  "For an allegation of induced infringement to survive a motion to dismiss, a complaint must plead facts plausibly showing that the accused infringer specifically intended another party to infringe the patent and knew that the other party's acts constituted infringement." <u>Nalco Co. v. Chem-Mod, LLC</u>, 883 F.3d 1337, 1355 (Fed. Cir. 2018) (cleaned up).

Section 271(c) offers another theory of indirect liability:

> Whoever offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer.

35 U.S.C. § 271(c).  To state a claim for contributory infringement, the patent owner must plead facts permitting an inference that (1) "there is direct infringement," (2) "the accused infringer had knowledge of the patent," (3) "the component has no substantial noninfringing uses," and (4) "the component is a material part of the invention." <u>Fujitsu Ltd. v. Netgear Inc.</u>, 620 F.3d 1321, 1326 (Fed. Cir. 2010).

Under the Patent Act, a district court "may," in its discretion, "increase the damages up to three times the amount found or assessed."  35 U.S.C. § 284.  "Awards of enhanced damages . . . are not to be meted out in a typical infringement case, but are instead designed as a 'punitive' or 'vindictive' sanction for egregious infringement behavior."  Halo Elecs., Inc. v. Pulse Elecs., Inc., 136 S. Ct. 1923, 1932 (2016).  As the Federal Circuit recently explained, an enhanced-damages inquiry proceeds in two steps:

> Under Halo, the concept of "willfulness" requires a jury to find no more than deliberate or intentional infringement.  The question of enhanced damages is addressed by the court once an affirmative finding of willfulness has been made.  It is at this second stage at which the considerations of egregious behavior and punishment are relevant.

Eko Brands, LLC v. Adrian Rivera Maynez Enters., Inc., 946 F.3d 1367, 1378 (Fed. Cir. 2020) (citations omitted).  Accordingly, at the pleading stage "a plaintiff must plausibly allege that the accused infringer deliberately or intentionally infringed a patent-in-suit after obtaining knowledge of that patent and its infringement."[6]

---

[6] APS Tech., Inc. v. Vertex Downhole, Inc., No. CV 19-1166 (MN), 2020 WL 4346700, at *4 (D. Del. July 29, 2020).  Pre-Eko caselaw in this District required a plaintiff to "plead facts sufficient to support an inference that the infringement at issue is 'egregious' in addition to pleading subjective intent." Novartis Vaccines & Diagnostics, Inc. v. Regeneron Pharms., Inc., No. 18-CV-2434 (DLC), 2018 WL 5282887, at *2 (S.D.N.Y.
(continued on following page)

III. **Discussion**

Defendants raise five arguments in support of their motion: (1) Defendants are not liable for patent infringement because "the FAC does not allege that the accused AWS-S100 and AWS-S200 laryngoscopes meet each limitation of the asserted claims 1-7 and 11-15" of the '178 Patent, (Defs. Br. at 4); (2) Dr. Berall "never pleads a plausible claim of direct infringement against" Hoya specifically, (id. at 6); (3) Dr. Berall failed to plead an induced infringement claim against Defendants, (id. at 8); (4) Dr. Berall failed to plead a contributory infringement claim against Defendants, (id. at 10); and (5) Dr. Berall cannot recover enhanced damages because he failed to plead that any infringement of the '178 Patent was willful, (see id. at 12-13).

a. **Direct Infringement**

The Court leads off by considering Dr. Berall's direct infringement claims against Defendants.

1. **The FAC's "Mounted On" Allegations**

First, Defendants assert that Dr. Berall's claims against each of them fail because the FAC "does not allege that the accused AWS-S100 and AWS-S200 laryngoscopes meet each limitation

---

(continued from previous page)
Oct. 24, 2018).  But because Eko, 946 F.3d at 1378, makes clear that egregiousness only becomes relevant after the jury has found willfulness, the Court finds that alleging egregiousness is not necessary at the pleadings stage.

of the asserted claims 1-7 and 11-15" of the '178 Patent.[7]
Specifically, Defendants aver that the FAC is deficient because
it does not plead "that the cameras of the accused AWS-S100 and
AWS-S200 laryngoscopes are 'mounted on' the blade" of the
device.  (Id. at 4.)  At base, Defendants posit, Dr. Berall
"cannot make the averment required to state a plausible claim of
infringement in view of the very structure of the accused
products . . . and, accordingly, his claims should be dismissed
with prejudice."  (Id. at 6.)

    At this stage, Dr. Berall's complaint need only contain
"sufficient factual matter, accepted as true, to state a claim
to relief that is plausible on its face."[8]  "To meet this
requirement, the plaintiff must plead factual content that
allows the court to draw the reasonable inference that the
defendant is liable for the misconduct alleged."  Nalco, 883
F.3d at 1347 (quotation marks omitted).  "Specific facts are not
necessary; the statement need only give the defendant fair

---

[7] (Defs. Br. at 4.)  Dr. Berall's patent asserted sixteen
claims.  (See '178 Patent col. 6 l.5-col. 8 l.17.)  Following ex
parte reexamination, the PTO confirmed the first fifteen claims
and cancelled the sixteenth.  (See Re-Exam Cert. at col. 1 l.10-
11.)

[8] Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quotation
marks omitted); see also L-7 Designs, 647 F.3d at 429
(instructing that Rule 12(c) motions are governed by "the same
standard applicable to dismissals pursuant to Rule 12(b)(6)"
(ellipsis and alterations omitted)).

notice of what the claim is and the ground upon which it rests." Disc Disease Sols. Inc. v. VGH Sols., Inc., 888 F.3d 1256, 1260 (Fed. Cir. 2018) (cleaned up).

Dr. Berall has met that standard.  The FAC does the following: (1) alleges that the AWS laryngoscopes "embod[y] at least claims 1–7, and 11–15 of the '178 Patent," (FAC ¶ 72); (2) attaches as exhibits the '178 Patent as well as the result of the PTO's ex parte re-examination, (see generally '178 Patent; Re-Exam Cert.); (3) appends photos, complete with annotations, of Defendants' allegedly infringing products, (see FAC ¶ 57), (4) explains how the AWS laryngoscopes' camera is mounted and describes the camera's location, (see id. ¶¶ 59–60); and (5) attaches as exhibits two third-party articles which also describe the AWS laryngoscopes.[9]  That is more than enough to provide fair notice of Dr. Berall's claims and the grounds upon which they rest, especially considering Disc Disease.[10]

_____

[9] (See Ex. 4 to FAC, dated Dec. 4, 2006 [dkt. no. 193-4] at 2 ("The AWS-S100 has an imaging CCD and LED light attached to its tip."); Ex. 6 to FAC, dated Dec. 31, 2007 [dkt. no. 193-6] at 641 ("The Pentax-AWS . . . displays the view obtained by a CCD camera mounted in the tip of the laryngoscope.").)

[10] There, "[t]he complaint specifically identified the three accused products--by name and by attaching photos of the product packaging as exhibits--and alleged that the accused products meet 'each and every element of at least one claim of the '113 [or '509] Patent, either literally or equivalently.'"  Disc Disease, 888 F.3d at 1260.  Those "allegations," the Federal Circuit found, were "sufficient under the plausibility standard
(continued on following page)

Defendants' focus on the absence of the magic words "mounted on" slices things far too finely.[11]

## 2. **Hoya's Direct Infringement**

Defendants also assert that Dr. Berall has failed sufficiently to plead that Hoya directly infringed the '178 Patent. (See Defs. Br. at 6-7.) Defendants suggest that "Plaintiff's only factual averment concerning Hoya Corp.'s alleged infringement consists of a single sentence at paragraph 67 of the FAC." (Id. at 7 (emphasis omitted).) That paragraph provides as follows:

> Hoya Corp. manufactured the AWS video laryngoscopes, either directly or through a subsidiary or contractor, and caused those AWS video laryngoscopes to be imported into, sold in, or offered for sale in the United States, including through Pentax and Hoya Digital.

(FAC ¶ 67.) Relying on that provision, Defendants maintain that the FAC fails to allege that the only activity Hoya undertook-- i.e., manufacturing--ever occurred in the United States, a

_____

(continued from previous page)
of Iqbal/Twombly," id., and Dr. Berall's allegations are far more comprehensive.

[11] It may well be that differences in the camera mounting mechanism between the '178 Patent and the AWS laryngoscopes mean that Defendants' product does not infringe the '178 Patent. But that is an issue of claim construction, which does not lend itself to resolution on a pleadings-based motion where courts "afford the claims their broadest possible construction." Bill of Lading, 681 F.3d at 1343 n.13.

prerequisite for a direct infringement claim against Hoya.  (See Defs. Br. at 7.)

Dr. Berall counters that the FAC alleges actions that Hoya itself undertook that infringe the '178 Patent.  (See Pl. Opp. at 10.)  Specifically, Dr. Berall relies on Paragraphs 13, 29, and 73 of the FAC.  (See id.)  Those paragraphs cannot bear the weight that Dr. Berall places on them.  Each speaks about Defendants collectively, merely stating in conclusory fashion that they sold, marketed, produced, etc., the AWS laryngoscopes.[12]  They do not, however, differentiate which activities were undertaken by which entity.  And unlike for Hoya Digital and Pentax, the FAC offers precious few other allegations regarding Hoya's activities.  Indeed, Paragraph 67 provides the only Hoya-specific allegation: That Hoya "manufactured the AWS video laryngoscopes."  (FAC ¶ 67.)  Absent

---

[12] (See FAC ¶ 13 ("This Court has personal jurisdiction over Pentax, Hoya Corp., and Hoya Digital at least because those defendants sold, offered for sale, or imported infringing AWS video laryngoscopes into this District, or caused the same to occur through their affiliates or contractors." (emphasis added)); id. ¶ 29 ("Pentax, Hoya, and Hoya Digital market, produce, distribute, sell, and/or offer to sell in the United States and/or import into the United States video laryngoscopes, including, for example, the AWS video laryngoscope." (emphasis added)); id. ¶ 73 ("Pentax, Hoya, and Hoya Digital made, used, offered to sell, imported and/or sold within the United States (including in this District), and/or actively induced others to make, use, offer to sell, and/or sell within the United States (including in this District), during the life of the '178 Patent, products that practice the inventions of the '178 Patent, including, for example, the AWS video laryngoscope.").)

from the FAC, however, is any allegation that such manufacturing occurred in the United States, notwithstanding Dr. Berall's acknowledgement that Hoya is a Japanese company with its principal place of business in Tokyo.  (See id. ¶ 5.)  Lacking such a domestic connection, Hoya's manufacturing of the AWS laryngoscopes cannot form the basis of a direct infringement claim.[13]

Attempting to salvage the direct infringement claim against Hoya, Dr. Berall focuses on the latter half of Paragraph 67, (see Pl. Opp. at 10-11), which alleges that Hoya "caused" the AWS "laryngoscopes to be imported into, sold in, or offered for sale in the United States" (principally by Pentax and Hoya Digital), (FAC ¶ 67).  Dr. Berall suggests that "by acting 'through Pentax and Hoya Digital' to perform directly infringing acts in the United States"--namely the importation and sale of the AWS laryngoscopes--Hoya "is also directly liable for its agents' infringement."  (Pl. Opp. at 11 (emphasis omitted).)  The Federal Circuit does extend direct infringement liability to instances where, "consider[ing] general principles of vicarious

---

[13] See Microsoft Corp. v. AT&T Corp., 550 U.S. 437, 455 (2007) ("The traditional understanding that our patent law operates only domestically and does not extend to foreign activities is embedded in the Patent Act itself . . . ." (cleaned up)); MEMC, 420 F.3d at 1375 ("It is well-established that the reach of section 271(a) is limited to infringing activities that occur within the United States.").

liability" such as agency, an "entity directs or controls others' performance." Akamai, 797 F.3d at 1022.  But Dr. Berall does not allege that any of the traditional elements of agency are present between Hoya and Pentax or Hoya and Hoya Digital.[14] Dr. Berall's allegations that Pentax and Hoya Digital are wholly owned subsidiaries, (see FAC ¶¶ 6-7), are insufficient standing alone to establish an agency relationship.[15]  Absent such a relationship, Pentax and Hoya Digital's alleged infringement cannot sustain a direct infringement claim against Hoya.[16]

Alternatively, Dr. Berall suggests that Hoya can be liable for direct infringement because "Hoya Corp., Hoya Digital, and Pentax formed a joint enterprise regarding the sale of the

---

[14] "The essential elements of agency are (1) the principal's right to direct or control the agent's actions, (2) the manifestation of consent by the principal to the agent that the agent shall act on his behalf, and (3) the consent by the agent to act." In re Google LLC, 949 F.3d 1338, 1345 (Fed. Cir. 2020) (cleaned up).

[15] See RESTATEMENT (SECOND) OF AGENCY § 14M (1958) ("A corporation does not become an agent of another corporation merely because a majority of its voting shares is held by the other."); see also Bigio v. Coca-Cola Co., 675 F.3d 163, 175 (2d Cir. 2012) ("A corporate parent's ownership interest in a subsidiary, standing alone, is insufficient to demonstrate the existence of an agency relationship.").

[16] See Aristocrat Techs. Austl. Pty Ltd. v. Int'l Game Tech., 709 F.3d 1348, 1363 (Fed. Cir. 2013) ("One party's direction or control over another in a principal-agent relationship or like contractual relationship operates as an exception to this general rule, but absent that agency relationship or joint enterprise, we have declined to find one party vicariously liable for another's actions.").

infringing AWS" laryngoscopes.  (Pl. Opp. at 11.)  That argument fares no better.  Dr. Berall has failed to plead any facts to support that the elements of a joint enterprise are present.[17] Indeed, the Court observes that a joint-enterprise theory is inconsistent with both (1) Hoya Digital and Pentax being wholly owned subsidiaries of Hoya, (see FAC ¶¶ 6-7), and (2) Dr. Berall's suggestion that Hoya Digital and Pentax were Hoya's agents.[18]

In short, the FAC does not allege sufficient facts to state a claim for direct infringement against Hoya.  Dr. Berall's direct infringement claim against Hoya will be dismissed.

**b. Indirect Infringement**

The Court turns next to Dr. Berall's indirect infringement claims against Defendants.

**1. Induced Infringement**

Defendants assert that Dr. Berall "fails to plead sufficient facts that plausibly show" that Defendants "induced infringement of the" '178 Patent.  (Defs. Br. at 8.)  Dr. Berall

---

[17] "A joint enterprise requires proof of four elements: (1) an agreement, express or implied, among the members of the group; (2) a common purpose to be carried out by the group; (3) a community of pecuniary interest in that purpose, among the members; and (4) an equal right to a voice in the direction of the enterprise, which gives an equal right of control."  Akamai, 797 F.3d at 1023.

[18] See Hollingsworth v. Perry, 570 U.S. 693, 713 (2013) ("An essential element of agency is the principal's right to control the agent's actions.").

disagrees, citing three theories of induced infringement he
claims the FAC pleads: "(1) the infringing use of the AWS by
medical practitioners; (2) the infringing re-sale and offer for
sale of the AWS by Hoya's distributors; and (3) in the case of
Hoya Corp., inducing the sale, offer for sale, and importation
of the AWS by its subsidiaries Pentax and Hoya Digital."  (Pl.
Opp. at 11.)  Because liability for induced infringement
"requires knowledge that the induced acts constitute patent
infringement," the FAC "must contain facts plausibly showing
that" Defendants "specifically intended" downstream actors "to
infringe" the '178 Patent and knew those downstream "acts
constituted infringement."  Bill of Lading, 681 F.3d at 1339.
The FAC fits that bill.

First, the FAC is flush with allegations of Defendants'
knowledge of the alleged infringement.  The FAC provides the
following: (1) "Pentax had knowledge of the '178 Patent, and
notice of its infringement thereof by the AWS, at least as of
the service of the Original Complaint" in 2010; (2) "Hoya had
knowledge of the '178 Patent shortly thereafter" based on its
filing of two ex parte reexamination requests with the PTO; and
(3) Hoya Digital became aware of the alleged infringement in
2012, after Hoya transferred its "airway management business
(including sale of the accused AWS laryngoscope) from Pentax to
Hoya Digital."  (FAC ¶¶ 33, 77-79.)  Dr. Berall also alleges

that Pentax first obtained knowledge of the '178 Patent in 2000, when Dr. Berall spoke with two Pentax employees at a conference and "explained the technical details of his invention to both and informed them of the '178 Patent." (Id. ¶ 81.)

And second, the FAC pleads sufficient facts suggesting that Hoya, Hoya Digital, and Pentax induced downstream actors to infringe the '178 Patent.  For example, the FAC alleges that Defendants "provide advertisements, videos, user manuals, or other materials to their customers encouraging the use of the AWS laryngoscope for intubations,"[19] which the Federal Circuit has suggested evidences "the required mental state for inducing infringement."  Microsoft Corp. v. DataTern, Inc., 755 F.3d 899, 905 (Fed. Cir. 2014).  Moreover, the FAC alleges that "Hoya Digital's website identified U.S. distributors, whose websites were offering the AWS video laryngoscope for sale at least as of 2016."[20]  Finally, the FAC alleges that "Hoya actively induces

---

[19] (FAC ¶ 75; see also Ex. 11 to FAC, dated Oct. 19, 2020 [dkt. no. 193-11] (Pentax website explaining the features and benefits of the AWS laryngoscopes).)  The FAC also suggests that Hoya Digital induced infringement by "exhibit[ing] the AWS video laryngoscope at trade shows in the United States in at least 2014 and 2015."  (FAC ¶ 70; see also Ex. 13 to FAC, dated Oct. 19, 2020 [dkt. no. 193-13] (Pentax website advertising display at trade show in Seattle); Ex. 14 to FAC, dated Oct. 19, 2020 [dkt. no. 193-14] (Pentax website advertising display at trade show in New Orleans).)

[20] (FAC ¶ 71 (citation omitted); see also Ex. 15 to FAC, dated July 12, 2020 [dkt. no. 193-15] at 1 (Hoya website
(continued on following page)

the infringing sale, offer for sale, and importation of the AWS

by its subsidiaries, Pentax and Hoya Digital, by providing or

selling them the infringing AWS, and directing them to sell,

offer for sale, or import the AWS."  (FAC ¶ 75.)

In short, the Court finds the aforementioned allegations,

taken together, sufficient to sustain Dr. Berall's induced

infringement claims at the pleadings stage.

### 2. **Contributory Infringement**

Next, Defendants aver that Dr. Berall "fails to plead

sufficient facts that plausibly show" that Defendants

"contributed to the infringement of the" '178 Patent.  (Defs.

Br. at 10.)  Defendants make two principal points: (1) Dr.

Berall fails to plead facts evincing that Defendants "possessed

the requisite knowledge element for contributory infringement";

and (2) Dr. Berall "nowhere pleads that . . . Defendants provide

anything less than the claimed laryngoscope itself," i.e., he

does not plead that Defendants sold components of the AWS

laryngoscopes or that the AWS laryngoscope is itself a component

---

(continued from previous page)
identifying Bay State Anesthesia, Cosmo Health, Rapid Trauma,
and Richard's Medical Equipment as U.S.-based distributors); Ex.
16 to FAC, dated July 12, 2020 [193-16] at 1 (Bay State
Anesthesia website advertising AWS laryngoscope for sale); Ex.
17 to FAC, dated July 12, 2020 [193-17] at 1-2 (Richard's
Medical Equipment website advertising AWS laryngoscope for
sale); Ex. 18 to FAC, dated July 12, 2020 [193-18] at 1-5 (Cosmo
Health website advertising AWS laryngoscope for sale and
demonstrating its use).)

of some other product.  (Id. at 11.)  Recall that to state a
claim for contributory infringement, Dr. Berall must plead that
(1) "there is direct infringement," (2) "the accused infringer
had knowledge of the patent," (3) "the component has no
substantial noninfringing uses," and (4) "the component is a
material part of the invention."  Fujitsu, 620 F.3d at 1326.
Defendants' arguments focus on the second and fourth elements.
The Court will address each in turn.

The Court disagrees with Defendants' argument regarding
knowledge.  The FAC contains numerous, detailed allegations that
the Defendants knew of the '178 Patent as early as 2000 (i.e.,
before they even began developing the AWS laryngoscopes) and of
their alleged infringement of the '178 Patent as early as 2010.
(See FAC ¶¶ 77-83.)  In other words, Defendants "knew that the
combination for which its components were especially made was
both patented and infringing." Golden Blount, Inc. v. Robert H.
Peterson Co., 365 F.3d 1054, 1061 (Fed. Cir. 2004).  That is
more than enough at the pleadings stage.

As for Defendants' "component" contention, the Court
agrees.  As the Federal Circuit has explained, "[t]he language
of [§ 271(c)] incorporates the core notion that one who sells a
component especially designed for use in a patented invention
may be liable as a contributory infringer, provided that the
component is not a staple article of commerce suitable for

substantial noninfringing use." <u>Ricoh Co. v. Quanta Comput.</u>
<u>Inc.</u>, 550 F.3d 1325, 1337 (Fed. Cir. 2008).  In other words, the
purpose of a contributory infringement claim is to address "the
situation where a seller would sell a component which was not
itself technically covered by the claims of a product or process
patent but which had no other use except with the claimed
product or process." <u>Hewlett-Packard Co. v. Bausch & Lomb Inc.</u>,
909 F.2d 1464, 1469 (Fed. Cir. 1990).  That situation is simply
not present in this case.  Here, Dr. Berall premises his
contributory infringement claim on Defendants' sale of the AWS
laryngoscopes, a discrete product that he asserts directly
infringes the '178 Patent.  (<u>See</u> FAC ¶ 74.)  Crucially, however,
the FAC does not allege that the AWS laryngoscopes are a
component part of some other patented invention, and, almost
definitionally, an entire product cannot itself be a component
of that same product.  Dr. Berall's reliance on <u>Conair Corp. v.</u>
<u>Jarden Corp.</u>, No. 13-CV-6702 (AJN), 2014 WL 3955172 (S.D.N.Y.
Aug. 12, 2014), is therefore misplaced.[21]

---

[21] There, the defendant was accused of selling a patented
milk container attachment for a coffee maker as a part of its
brand of espresso, cappuccino, and latte machines.  <u>See</u> <u>Conair</u>,
2014 WL 4468088 at *1.  In other words, the patented milk
container attachment was offered for sale as an individual
component of a larger coffee machine.  That is materially
different from what the Court confronts here.

Dr. Berall tries to save his contributory infringement claim by asserting that the FAC alleges Defendants sold individual components of the AWS laryngoscopes, including, most notably, disposable PBlades.  (See Pl. Opp. at 16.)  But the FAC contains no such allegations.  A few paragraphs of the FAC do cite to appended exhibits describing the PBlade as a distinct component of the AWS laryngoscopes.[22]  But Dr. Berall nowhere alleges that Defendants sold PBlades, as individual components, in the United States.  That failure seals the fate of his contributory infringement claim.

In short, the FAC alleges only that Defendants sold the entire product protected by the '178 Patent, not a component thereof.  Nor does the FAC allege that the AWS laryngoscopes themselves are a component part of some other patented invention.  Accordingly, Dr. Berall's contributory infringement claims will be dismissed.

---

[22] (See Ex. 8 to FAC, dated Oct. 12, 2008 [dkt. no. 193-8] at 129 (showing "the Pentax AWS® laryngoscope with single-use blade clipped onto the camera system" (cited at FAC ¶ 60)); Ex. 9 to FAC, dated Apr. 2009 [dkt. no. 193-9] at 898 ("THE Pentax-AWS . . . consists of a disposable blade (PBlade®; Hoya Corporation), a 12-cm image tube with a charge-coupled device camera, and a handle with a 6-cm liquid crystal display (fig. 1)." (cited at FAC ¶ 60)); Ex. 13 at 1 ("The PENTAX video laryngoscope AWS-S200 and PBLADE will be on display at the 2014 SAM Meeting, to be held in Seattle, the United States." (cited at FAC ¶ 70)); Ex. 14 at 1 ("The PENTAX video laryngoscope AWS-S200 and PBLADE will be on display at the ANESTHESIOLOGY™ 2014, to be held in New Orleans, the United States." (cited at FAC ¶ 70)).)

### c. **Willful Infringement**

Finally, Defendants assert that Dr. Berall has failed adequately to plead willful infringement.  (See Defs. Br. at 12-13.)  Specifically, Defendants suggest that the FAC's "allegation of willful infringement consists only of a single, conclusory sentence: 'Pentax's, Hoya's, and Hoya Digital's infringement has occurred with knowledge of the '178 Patent and has been willful.'"  (Id. at 13 (quoting FAC ¶ 77) (emphasis omitted).)  In Defendants' view, "[t]hat is entirely insufficient under the law and dismissal of Plaintiff's claim of willful infringement is thus appropriate."  (Id.)

The Court disagrees with Defendants' characterization of the FAC.  Following "Halo, the concept of 'willfulness' requires a jury to find no more than deliberate or intentional infringement."  Eko, 946 F.3d at 1378.  Thus, at the pleading stage, Dr. Berall need only "plausibly allege that the accused infringer deliberately or intentionally infringed a patent-in-suit after obtaining knowledge of that patent and its infringement."  APS Tech., 2020 WL 4346700, at *4.  He has done so.  The FAC alleges the following: (1) Defendants knew about the '178 Patent as early as 2000, several years before Defendants developed and began selling the AWS laryngoscopes, (see FAC ¶¶ 81-84); (2) Defendants were aware of their alleged infringement as early as 2010, (see id. ¶¶ 77-80); and (3)

despite possessing such knowledge, Defendants manufactured their AWS suite of laryngoscopes anyway, (see id. ¶¶ 64-73).  That is enough at the pleadings stage.  Defendants reliance on a series of pre-Eko cases is misplaced.[23]

The Court is, of course, mindful of Justice Breyer's observation that courts may not "award enhanced damages simply because the evidence shows that the infringer knew about the patent and nothing more." Halo, 136 S. Ct. at 1936 (Breyer, J., concurring).  But, as Eko clarified, 946 F.3d at 1378, whether enhanced damages are warranted is a question distinct from whether a willful infringement claim can go to the jury in the first place.  Although it may well be that Dr. Berall cannot recover such damages--even if he ultimately succeeds on his infringement claims--the Court need not resolve that issue now. Dr. Berall need not prove his case at the pleadings stage.

---

[23] Defendants cite only one case issued after Eko: Signify North America Corp. v. Axis Lighting Inc., No. 19-CV-5516 (DLC), 2020 WL 1048927 (S.D.N.Y. Mar. 4, 2020).  There, the court granted a motion to dismiss where the plaintiff alleged only that the defendant knew of the patent-at-issue through "pre-suit notice letters."  Id. at *3.  Unlike here, however, the plaintiff in that case did "not allege that [the defendant] had knowledge of [the plaintiff]'s patents at the time it began selling the accused products."  Id.  Moreover, the Signify court later reinstated the willful infringement claims following a successful motion for reconsideration.  See Signify N. Am. Corp. v. Axis Lighting Inc., No. 19-CV-5516 (DLC), 2020 WL 2079844, at *1 (S.D.N.Y. Apr. 30, 2020).  Signify therefore provides Defendants with no help.

**IV.** **Conclusion**

For the reasons and to the extent described above, Defendants' motion for judgment on the pleadings [dkt. no. 244] is <u>GRANTED IN PART</u> and <u>DENIED IN PART</u>.  The following claims are hereby dismissed: (1) the direct infringement claim against Hoya and (2) the contributory infringement claims against Hoya, Hoya Digital, and Pentax.  Consistent with Federal Rule of Civil Procedure 15(a)(2), Dr. Berall may file an amended complaint no later than September 24, 2021.  The Clerk of the Court shall close the open motion.

**SO ORDERED.**

Dated:     September 2, 2021
           New York, New York

_____
LORETTA A. PRESKA
Senior United States District Judge