UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
JONATHAN BERALL, M.D., M.P.H.,

                    Plaintiff,

-against-                                    No. 10-CV-5777 (LAP)

TELEFLEX MEDICAL INC., et al.,               MEMORANDUM & ORDER

                    Defendants.
```

LORETTA A. PRESKA, Senior United States District Judge:

    Before the Court is the motion for summary judgment filed by Defendant Teleflex Medical, Inc. ("Teleflex").[1] Plaintiff Jonathan Berall, M.D., M.P.H., opposed the motion,[2] and Teleflex

---

[1] (See Defendant Teleflex Medical Incorporated's Notice of Motion for Summary ("Notice"), dated Feb. 12, 2021 [dkt. no. 255]; see also Defendant Teleflex Medical Incorporated's Statement of Undisputed Material Facts ("Teleflex 56.1"), dated Feb. 12, 2021 [dkt. no. 256]; Defendant Teleflex Medical Incorporated's Memorandum of Law in Support of Its Motion for Summary Judgment ("Teleflex Br."), dated Feb. 12, 2021 [dkt. no. 257]; Declaration of Jonathan R. Wise in Support of Defendant Teleflex Medical Incorporated's Motion for Summary Judgment, dated Feb. 12, 2021 [dkt. no. 258].)

[2] (See Plaintiff Dr. Berall's Response to Teleflex Medical Inc.'s Motion for Summary Judgment ("Pl. Opp."), dated Mar. 3, 2021 [dkt. no. 265]; see also Plaintiff Dr. Berall's Response to Teleflex Medical Inc.'s Local Rule 56.1 Statement of Undisputed Facts for Summary Judgment and Dr. Berall's Statement of Additional Material Facts ("Pl. 56.1"), dated Mar. 3, 2021 [dkt. no. 266]; Declaration of Plaintiff Dr. Berall in Support of His Response to Teleflex Medical Inc.'s Motion for Summary Judgment, dated Mar. 2, 2021 [dkt. no. 267]; Declaration of Christopher Decoro in Support of Plaintiff's Response to Teleflex Medical Inc.'s Motion for Summary Judgment, dated Mar. 3, 2021 [dkt. no. 268].)

1

replied.[3]  Dr. Berall also requested oral argument.  (See Letter Motion, dated Mar. 3, 2021 [dkt. no. 269].)  For the reasons set forth below, the motion for summary judgment is DENIED, and the request for oral argument is DENIED as moot.

I. **Facts**

Dr. Berall owns all right, title, and interest in United States Patent No. 5,827,178 ("the '178 Patent").  (Teleflex 56.1 ¶ 7.)  The '178 Patent is entitled "Laryngoscope for Use in Trachea Intubation" and was issued by the United States Patent and Trademark Office ("PTO") on October 27, 1998.  (Id. ¶¶ 7-8.)  The '178 Patent covers a laryngoscope, a medical device used for intubating an oxygen-providing tube into the trachea of a patient who is not breathing.  (See Pl. 56.1 ¶ 3.)

Aircraft Medical Ltd. ("Aircraft") manufactured the McGrath Laryngoscope, (id. ¶ 1), a device Dr. Berall alleged infringed the '178 Patent, (see Teleflex 56.1 ¶ 15).  LMA was Aircraft's exclusive U.S. distributor of the McGrath Laryngoscope from about 2006 to 2010.  (See Pl. 56.1 ¶ 2; Reply 56.1 ¶ 2.)  At no

---

[3] (See Defendant Teleflex Medical Incorporated's Reply Memorandum of Law in Support of Its Motion for Summary Judgment ("Teleflex Reply"), dated Mar. 15, 2021 [dkt. no. 273]; see also Defendant Teleflex Medical Incorporated's Response to Plaintiff Dr. Berall's Response to Teleflex Medical Incorporated's Local Rule 56.1 Statement of Undisputed Facts for Summary Judgment and to Dr. Berall's Rule 56.1 Statement of Additional Material Facts ("Reply 56.1"), dated Mar. 15, 2021 [dkt. no. 272].)

time during that period did ether Aircraft or LMA possess a license to the '178 Patent.  (See Pl. 56.1 ¶¶ 10-11, 28.)

On July 30, 2010, Dr. Berall sued, among other parties, Aircraft and LMA for patent infringement.  (See Teleflex 56.1 ¶ 1.)  In response, two other defendants filed ex parte petitions seeking reexamination of the '178 Patent.  (See id. ¶ 9.)  On May 11, 2011, the Court stayed this case pending the PTO's resolution of the reexamination proceedings.  (See Pl. 56.1 ¶ 16.)  Eight years later, the PTO's Patent Trials and Appeals Board confirmed the patentability of claims 1–15 of the '178 Patent.  (See Teleflex 56.1 ¶ 14.)  The PTO issued a re-examination certificate on July 16, 2019.  (See Pl. 56.1 ¶ 17.)

On August 12, 2019, Aircraft and Dr. Berall entered into an agreement to settle the claims against Aircraft ("the Agreement").  (See Teleflex 56.1 ¶ 21.)  The Agreement contained the following release:

> Berall releases Aircraft and its Affiliates from any claim or demand, whether now known or unknown, arising out of or related to (i) infringement of the '178 patent; (ii) the claims and counterclaims asserted in, and the conduct of, the Litigation; (iii) any acts and conduct prior to the Effective Date of this Agreement that would have been released under this Agreement if performed after the Effective Date; and (iv) the conduct of settlement negotiations (except for representations or obligations expressly included in this Agreement).

(Id. ¶ 23.)  The Agreement incorporated no provision that purported to release LMA, and LMA is not an "Affiliate" as that

3

term is defined under the Agreement.  (See Pl. 56.1 ¶¶ 26, 32.) The Agreement also contained a merger clause, which confirmed that the Agreement represented the "entire and only understanding of" the parties.  (Teleflex 56.1 ¶ 28.)  Shortly thereafter, Dr. Berall and Aircraft submitted a joint stipulation to dismiss Aircraft, (id. ¶¶ 5, 29), which the Court so ordered on August 26, 2019, (id. ¶¶ 6, 29).

On November 12, 2020, Dr. Berall filed a First Amended Complaint.  (See id. ¶ 17.)  On December 1, 2020, following the conclusion of mediation proceedings, the Court lifted the stay as to LMA.  (See Memo Endorsement, dated Dec. 1, 2020 [dkt. no. 207].)  On January 19, 2021, the Court substituted Teleflex for LMA because, in December 2013, LMA merged into Teleflex and ceased to exist.  (See Order, dated Jan. 19, 2021 [dkt. no. 234]; Teleflex 56.1 ¶ 4.)  On February 12, 2021, Teleflex filed the instant motion.  (See Notice at 2.)

II.  **Legal Standards**

"In this patent case the [C]ourt applies the law of the Federal Circuit to patent issues, and the law of its regional circuit, the Second Circuit, to non-patent issues." Am. Tech. Ceramics Corp. v. Presidio Components, Inc., 414 F. Supp. 3d 304, 307 (E.D.N.Y. 2019).

### a. **Summary Judgment**

Summary judgment is required where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  The movant bears the burden to establish its entitlement to summary judgment.  See Rodriguez v. City of New York, 72 F.3d 1051, 1060-61 (2d Cir. 1995).  In assessing the record, the Court "must view the evidence in the light most favorable to the [non-moving] party," Tolan v. Cotton, 572 U.S. 650, 657 (2014) (per curiam) (quotation marks omitted), and "resolve all ambiguities and draw all reasonable inferences against the movant," Caronia v. Philip Morris USA, Inc., 715 F.3d 417, 427 (2d Cir. 2013).  Put simply, "[s]ummary judgment is appropriate when there can be but one reasonable conclusion as to the verdict, i.e., it is quite clear what the truth is, and no rational factfinder could find in favor of the nonmovant."  SEC v. Sourlis, 851 F.3d 139, 144 (2d Cir. 2016) (cleaned up).  "The same standard applies whether summary judgment is granted on the merits or on an affirmative defense . . . ."  Giordano v. Mkt. Am., Inc., 599 F.3d 87, 93 (2d Cir. 2010).

### b. **Patent Exhaustion**

"The longstanding doctrine of patent exhaustion provides that the initial authorized sale of a patented item terminates

5

all patent rights to that item." Quanta Comput., Inc. v. LG Elecs., Inc., 553 U.S. 617, 625 (2008).  "[B]y exhausting the patentee's monopoly in that item, the sale confers on the purchaser, or any subsequent owner, the right to use or sell the thing as he sees fit." Bowman v. Monsanto Co., 569 U.S. 278, 283 (2013) (cleaned up).  That is so because "the patentee has bargained for, and received, the full value of the goods." Princo Corp. v. Int'l Trade Comm'n, 616 F.3d 1318, 1328 (Fed. Cir. 2010) (en banc).  "Patent exhaustion is an affirmative defense to a claim of patent infringement," which "may be properly decided by summary judgment."  Keurig, Inc. v. Sturm Foods, Inc., 732 F.3d 1370, 1373 (Fed. Cir. 2013).

"Exhaustion is triggered only by a sale authorized by the patent holder." Quanta, 553 U.S. at 636.  "[T]he threshold criterion is that the product whose sale is suggested to exhaust the patent must have originated from or through the patentee." JVC Kenwood Corp. v. Nero, Inc., 797 F.3d 1039, 1047 (Fed. Cir. 2015).  Exhaustion occurs "when the patented product passes to the hands of a transferee and when he legally acquires a title to it."  LifeScan Scot., Ltd. v. Shasta Techs., LLC, 734 F.3d 1361, 1374 (Fed. Cir. 2013) (quotation marks omitted). Importantly, however, the sale at issue must have been authorized at the time it was made.  See Honeywell Int'l, Inc. v. United States, 609 F.3d 1292, 1304 (Fed. Cir. 2010).

### III. **Discussion**

Teleflex avers that the doctrine of patent exhaustion precludes Dr. Berall from asserting his patent infringement claims against LMA. (See Teleflex Br. at 7-14.) Teleflex's argument proceeds in two steps. First, the Agreement's release "is an authorization of Aircraft's past sales of the" McGrath Laryngoscope "because it is unconditional and does not exclude sales to any downstream distributor or user." (Id. at 8.) And second, as a result of that authorization, Dr. "Berall exhausted any of his patent rights over these products downstream"-- "including the products sold by Aircraft to LMA"--and "cannot seek further recovery with respect to these released products downstream from Aircraft." (Id. at 11.) For support, Teleflex relies heavily on TransCore, LP v. Electric Transaction Consultants Corp., 563 F.3d 1271 (Fed. Cir. 2009). (See id. at 8; Teleflex Reply at 4-5.)

Teleflex's argument trips at the first step. The plain language of the Agreement[4] merely releases Aircraft from liability for patent infringement related to past sales of the

---

[4] Dr. Berall repeatedly attempts to distinguish a release from a license in his arguments about the Agreement. (See Pl. Opp. at 10-17.) But TransCore, 563 F.3d at 1276, instructs that the focus should be on the substance of the Agreement rather than its form. In other words, the critical question asks what the Agreement authorizes, not whether it "is framed in terms of a 'covenant not to sue' or a 'license'" or a "release." Id.

7

McGrath Laryngoscope.[5] Contrary to Teleflex's assertion, the Agreement does not establish that Aircraft's sales of the McGrath Laryngoscope--all of which occurred prior to the execution of the Agreement--were authorized, let alone that they were sanctioned <u>at the time they were made</u>. Instead, the Agreement simply represents the parties' bargain that Aircraft would not face liability for its past infringing acts. Because the Agreement does not retroactively authorize Aircraft's past sales, patent exhaustion therefore does not protect LMA's pre-Agreement downstream sales of the McGrath Laryngoscope.[6]

---

[5] (<u>See</u> Teleflex 56.1 ¶ 23 ("Berall releases Aircraft and its Affiliates from any claim or demand, whether now known or unknown, arising out of or related to (i) infringement of the '178 patent; (ii) the claims and counterclaims asserted in, and the conduct of, the Litigation; (iii) any acts and conduct prior to the Effective Date of this Agreement that would have been released under this Agreement if performed after the Effective Date; and (iv) the conduct of settlement negotiations (except for representations or obligations expressly included in this Agreement).").)

[6] <u>See</u>, <u>e.g.</u>, <u>Realtime Data LLC v. EchoStar Corp.</u>, No. 6:17-CV-00084-JDL, 2018 WL 10466828, at *3 (E.D. Tex. Dec. 6, 2018) ("As these sales occurred prior to the execution of the RPX Agreement, they are unauthorized and cannot be retroactively authorized by the later execution of the RPX Agreement."); <u>Sunoco Partners Mktg. & Terminals L.P. v. U.S. Venture, Inc.</u>, No. 15 C 8178, 2017 WL 4283946, at *8 (N.D. Ill. Sept. 27, 2017) ("The conclusion that a subsequent purchase of the patent itself cannot retroactively authorize an earlier sale of a patented item reinforces the court's determination that a subsequent covenant not to sue cannot do so either."); <u>cf.</u> <u>Aro Mfg. Co. v. Convertible Top Replacement Co.</u>, 377 U.S. 476, 500 (1964) ("With respect to the pre-agreement sales, however, Aro's contributory infringement had already taken place at the time of the
(continued on following page)

TransCore is not to the contrary.  In that case, TransCore and Mark IV Industries reached a settlement agreement, which included, inter alia, a covenant by TransCore not to sue Mark IV "for future infringement" of TransCore's patents.  TransCore, 563 F.3d at 1273 (emphasis added).  The Federal Circuit ultimately held that the covenant constituted an authorization for Mark IV to engage in future sales of products that would otherwise infringe the patents-at-issue.  See id. at 1276.  But here, unlike in TransCore, LMA's sales were made before the Agreement was effectuated.  Because the timing of any sales authorization is crucial to the patent exhaustion analysis, see Honeywell, 609 F.3d at 1304, TransCore does not help Teleflex.[7]

---

(continued from previous page)
agreement.  Whatever the agreement's effect on the amount recoverable from Aro . . . [,] it cannot be held, in the teeth of its contrary language and intention, to have erased the extant infringement.").

[7] Teleflex does identify one case that applied TransCore to conclude that a release in a settlement agreement operated as a retroactive authorization for purposes of patent exhaustion. See PSN Ill., LLC v. Abbott Lab'ys, No. 09 C 5879, 2011 WL 4442825, at *7-9 (N.D. Ill. Sept. 20, 2011).  But PSN, of course, is not precedent.  See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd, 547 F.3d 109, 112 (2d Cir. 2008).  Moreover, as another court in the same District aptly recognized, PSN did "not take account of the fact that TransCore concerned sales postdating the covenant not to sue in that case, which expressly covered future sales."  Cascades Comput. Innovation, LLC v. Samsung Elecs. Co., 70 F. Supp. 3d 863, 870 (N.D. Ill. 2014).  And finally, PSN does not reckon with (or even cite to) Honeywell.  For each of those reasons, the Court declines to apply PSN.

(continued on following page)

9

Because patent exhaustion provides LMA with no safe harbor, summary judgment would be appropriate only if the Agreement specifically released Dr. Berall's claims against LMA as well as Aircraft.  As Teleflex concedes, however, the Agreement did not do so.  (See Pl. 56.1 ¶ 26.)  Accordingly, summary judgment is not warranted.

## IV. Conclusion

For the reasons above, Teleflex's motion for summary judgment [dkt. no. 255] is DENIED.  Dr. Berall's request for oral argument [dkt. no. 269] is DENIED as moot.  The Clerk of the Court shall close the open motions.

**SO ORDERED.**

Dated:     September 13, 2021
           New York, New York

_____
LORETTA A. PRESKA
Senior United States District Judge

---

(continued from previous page)
LMA also relies on High Point SARL v. T-Mobile USA, Inc., 640 F. App'x 917 (Fed. Cir. 2016), and Canon Inc. v. Tesseron Ltd., 146 F. Supp. 3d 568 (S.D.N.Y. 2015).  (See Teleflex Br. at 12.)  Those cases are inapposite.  Although both cases involved patent exhaustion, they turned primarily on whether a patent holder had granted an authorized licensee the authority to grant retroactive sublicenses.  See High Point, 640 F. App'x at 927-28; Canon, 146 F. Supp. 3d at 574-79.  The Court confronts nothing in the same ballpark here.